C 09-0393 *l&m*

_____ FILED          _____ ENTERED
_____ LODGED         _____ RECEIVED

MAR 2 5 2009    LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY



09-CV-00393-EXH A-D

# EXHIBIT A

**FILED**

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

1

2

3

4

5

6                          SUPERIOR COURT OF WASHINGTON
                                    KING COUNTY
7

8    SUSAN RYNEARSON, individually and on        CLASS ACTION
     behalf of all others similarly situated,
9

10                        Plaintiff,              Case No.

11          vs.

12   MOTRICITY, INC., a Delaware corporation,     **COMPLAINT**

13                        Defendant.              JURY TRIAL DEMANDED

14

15          Plaintiff, by her attorneys, alleges as and for her class action complaint, upon personal

16   knowledge as to herself and her own acts, and as to all other matters upon information and belief,

17   as follows:

18                              **NATURE OF THE ACTION**

19          1.     Plaintiff Susan Rynearson brings this class action complaint against Bellevue,

20   Washington-headquartered defendant Motricity, Inc. for its unlawful practice of facilitating the

21   charging of cellular telephone customers for products and services the customers have not

22   authorized, a practice which has resulted in Motricity unlawfully collecting a significant sum of

23   money from consumers nationwide, and to obtain redress for all persons injured by Motricity's

24   conduct.

COMPLAINT                            - 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

9

**PARTIES**

2.   Plaintiff Susan Rynearson is a resident of Florida.

3.   Defendant Motricity, Inc. is a leading aggregator in the United States.  Motricity is a Delaware corporation headquartered at 601 108th Ave. NE, Suite 900, Bellevue, Washington 98004.  Motricity does business throughout the State of Washington and the nation.

**JURISDICTION AND VENUE**

4.   This Court has jurisdiction over the subject matter of this action pursuant to RCW § 2.08.010.

1.   Jurisdiction and venue are proper because Motrocity is a corporation headquartered in King County and/or because the improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from Washington.

**CONDUCT COMPLAINED OF**

2.   This case arises from two closely related phenomena.  The first is the capability of most cellular telephones not only to make and receive telephone calls but also to send and receive text messages, including – most significantly for present purposes – "premium" text message services.  These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio, and participatory television).

3.   The second underlying phenomenon is this:  Just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by wireless carriers.  Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they

COMPLAINT                                        - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98974-7033
Tel: (425) 868-7613 • Fax: (425) 868-7870

1     do so with the help of third-party companies known as aggregators. These aggregators act as

2     middle-men, representing numerous mobile content providers in arriving at the agreements that

3     allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both

4     the aggregators and the wireless carriers are compensated for their services to the mobile content

5     providers by retaining a substantial percentage of the amount for each premium mobile content

6     transaction.

7        4.     The rapid and largely unplanned growth of the premium mobile content industry

8     has led both to the above-described structure and a disastrous flaw within it. That flaw –

9     understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content

10     providers – is an open secret within the industry, but little understood outside of it. The billing

11     and collection systems established by companies including Motricity in aid of the premium

12     mobile content industry that enriches them are conspicuously free of any checks or safeguards to

13     prevent erroneous and unauthorized charges from being added to customers' bills.

14        5.     As Motricity knows, thousands of dollars have been collected on account of such

15     unauthorized charges for premium mobile content in the industry over the last few years. And

16     while it has always been within the power of companies such as Motricity to institute simple and

17     effective measures that would prevent this, they have instead knowingly maintained the very

18     system that has allowed these erroneous charges. Motricity has reaped and retained its

19     respective share of the improper collections.

20        6.     While the total sales in the nation of premium mobile content since its inception

21     amount to a significant sum, the business is still in its infancy. The burgeoning industry has

22     already expanded from ordinary ringtones into mass media-related products such as interactive

23     radio and participatory voting at television and concert events and, most recently, into services

24

COMPLAINT        - 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

11

1   that enable cell phones to function as credit cards.  Unchecked, Motricity's practices will injure

2   an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

3         7.      Unlike transactions made using checks and credit cards, which require a signature

4   or a highly private sixteen-digit credit card number, the only information a mobile content

5   provider needs to charge a consumer for its products is the consumer's cellular telephone

6   number.  Once a mobile content provider has a consumer's cell phone number, it can cause that

7   consumer to be billed for services and products irrespective of whether the consumer actually

8   agreed to purchase them.

9         8.      Armed with only a cell phone number, the mobile content provider can simply

10  provide that number, along with an amount to be charged, to a billing aggregator (such as

11  Motricity).  The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the

12  bill associated with that cell phone number.  The charge will then appear on the consumer's cell

13  phone bill, often with only minimal, cryptic identifying information.

14        9.      Because the protections normally present in consumer transactions – such as

15  signatures and private credit card numbers – are absent from this process, the likelihood of false

16  charges increases enormously.  And because a substantial part of mobile content "sales" are

17  effected through web sites using misleading, oblique, or inadequately explained "consent"

18  procedures, that likelihood increases by another order of magnitude.  Mobile content providers

19  have powerful financial incentives to collect as many cell phone numbers as possible but little

20  incentive to ensure that the owners of those numbers have truly agreed to purchase their goods

21  and services.

22        10.      In order to tap into the emerging mobile content marketplace and make content

23  services available to wireless consumers, content providers must first obtain access to wireless

24  carriers' mobile communications networks and frequently do so by "partnering" with

COMPLAINT            - 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

12

1   aggregators – intermediary companies such as Motricity that offer content providers (its "content

2   provider partners") direct access to the carriers through existing relationships.  This allows

3   content providers to focus on developing and marketing branded content, applications, and

4   programs while aggregators manage the complex carrier relationships, distribution, billing, and

5   customer service.

6       11.     As an aggregator, Motricity operates a mobile transaction network helping

7   companies develop, deliver, and bill for mobile content services to compatible mobile devices

8   throughout the State of Washington and the nation.

9       12.     By using its end-to-end technology platforms, its relationships with U.S. carriers,

10  and other value-added services, aggregators have forged a crucial link between the wireless

11  carriers and the mobile content providers.  They have enabled the transformation of wireless into

12  a marketing, content delivery, and collections process, while carving out a profitable role for

13  themselves as very critical middlemen in this rapidly growing industry.

14      13.     Motricity has developed a vast distribution system that integrates into the wireless

15  networks of some of the largest wireless carriers nationwide, providing direct connections to

16  numerous mobile operators.  As a result, Motricity is able to reach and bill many millions of

17  wireless subscribers nationwide.

18      14.     While aggregators charge their content provider customers some upfront fees,

19  their revenue is primarily generated through a "revenue share" on transactions for which they bill

20  cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile

21  content services offered by a content provider, the aggregator and/or the content provider cause

22  said charge to be billed directly on the cellular telephone bill of the carrier's customer who

23  currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

24

COMPLAINT                                    - 5 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

13

15.    The carrier then bills and collects the charge from its current subscriber, retains about a portion of the proceeds as its "revenue share," and then remits the balance to the aggregator who has direct access to its network, e.g., Motricity, which retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who then retains a percentage of the balance in the form of its own "revenue share" and then remits the balance to its mobile content provider client).

16.    Indeed, if Motricity wanted to end this wrongful billing, it could do so in an instant. All it would have to do to ensure that it is obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time the account is opened, and require that it be produced any time a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

17.    But instead of implementing such a simple safeguard, Motricity has intentionally created and maintained a system that encourages wrongdoing at every step.  Such system results in the wrongful charging of small amounts of money to large numbers of people.

## FACTS RELATING TO PLAINTIFF RYNEARSON

18.    In or about 2005, plaintiff Rynearson purchased new cell phone service for her personal use from an established wireless carrier.

19.    On that same day, in exchange for a cellular telephone service plan, Rynearson agreed to pay her carrier a set monthly fee for a period of approximately 12 months.

20.    In or about 2007, Rynearson's cell phone account was charged or caused to be charged by Motricity for unwanted mobile content services on behalf of third-parties.

COMPLAINT

- 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

14

1    21.    At no time did Rynearson authorize the purchase of or billing for these products

2 and services by Motricity or anyone else and at no time did Rynearson consent to sending of so-

3 called premium text messages to her cellular telephone.

4    22.    During the relevant time period, Motricity caused Rynearson to be charged

5 service fees for so-called premium text messages.

6    23.    At no time did Rynearson authorize Motricity or anyone else to bill her for these

7 charges and at no time did Motricity verify Rynearson's purported authorization of these

8 charges.

9    24.    Motricity has yet to provide a full refund of the unauthorized charges consisting

10 of the premium text message charges, ordinary text messages, data charges, back interest,

11 implement adequate procedures to ensure that such unauthorized charges would not appear in

12 future billing periods, and/or an assurance that such unauthorized charges would not appear in

13 future billing periods.

## CLASS ALLEGATIONS

15    25.    Rynearson brings this action pursuant to CR 23 on behalf of herself and a class

16 consisting of all wireless telephone subscribers nationwide who suffered losses or damages as a

17 result of Motricity facilitating and billing for mobile content products and services not authorized

18 by the subscriber; provided, however, that the following are excluded from this proposed Class:

19 (i) the defendant, and (ii) any employee of a defendant.

20    26.    The Class consists of thousands of individuals and other entities, making joinder

21 impractical.

22    27.    The claims of plaintiff Rynearson are typical of the claims of all of the other

23 members of the Class.

24

COMPLAINT                                    - 7 -

15

1    28.    Plaintiff will fairly and adequately represent and protect the interests of the other

2  members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting

3  complex litigation and class actions. Plaintiff and their counsel are committed to vigorously

4  prosecuting this action on behalf of the members of the Class, and have the financial resources to

5  do so. Neither Plaintiff nor their counsel has any interest adverse to those of the other members

6  of the Class.

7    29.    Absent a class action, most members of the Class would find the cost of litigating

8  their claims to be prohibitive, and will have no effective remedy. The class treatment of

9  common questions of law and fact is also superior to multiple individual actions or piecemeal

10  litigation in that it conserves the resources of the courts and the litigants, and promotes

11  consistency and efficiency of adjudication.

12    30.    Motricity has acted and failed to act on grounds generally applicable to plaintiff

13  and the other members of the Class, requiring the Court's imposition of uniform relief to ensure

14  compatible standards of conduct toward the members of the Class.

15    31.    The factual and legal bases of Motricity's liability to plaintiff and to the other

16  members of the Class are the same, resulting in injury to the plaintiff and all of the other

17  members of the Class. Plaintiff and the other members of the Class have all suffered harm and

18  damages as a result of Motricity's wrongful conduct.

19    32.    There are many questions of law and fact common to the claims of Plaintiff and

20  the other members of the Class, and those questions predominate over any questions that may

21  affect individual members of the Class. Common questions for the Class include but are not

22  limited to the following:

23        (a)    whether Motricity's conduct described herein resulted in unjust

24        enrichment; and

COMPLAINT                                    - 8 -

16

1       (b)     whether Motricity's conduct constitutes unfair and deceptive acts or

2       practices.

3     33.    The questions of law and fact common to the members of the class predominate

4 over any questions affecting only individual members and a class action is superior to all other

5 available methods for the fair and efficient adjudication of this controversy.

6                     **FIRST CAUSE OF ACTION**

7                    **Restitution / Unjust Enrichment**

8                  **on Behalf of Plaintiff and the Class**

9     34.    Plaintiff incorporates by reference the foregoing allegations.

10     35.    A benefit has been conferred upon Motricity by plaintiff and the Class.  Motricity

11 has received and retains money belonging to plaintiff and the Class resulting from its facilitation

12 of billing and collecting significant amounts of money in unauthorized mobile content charges.

13     36.    Motricity appreciates or has knowledge of said benefit.

14     37.    Motricity unjustly gained money from plaintiff and the Class as a direct result of

15 Motricity's conduct.

16     38.    Under principles of equity and good conscience, Motricity should not be

17 permitted to retain the money belonging to plaintiff and the Class which Motricity has unjustly

18 received as a result of its actions.

19                    **SECOND CAUSE OF ACTION**

20                 **Tortious Interference with a Contract**

21                  **on Behalf of Plaintiff and the Class**

22     39.    Plaintiff incorporates by reference the foregoing allegations.

23     40.    Plaintiff and the Class had contractual relationships with their wireless carriers

24 whereby they agreed to pay a certain sum of money in exchange for activation of their cellular

COMPLAINT               - 9 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ▪ Fax: (425) 868-7870

17

1   telephone accounts and their carriers' promise to provide various communication and related

2   services to plaintiff and the Class and to bill plaintiff and the Class only for products or services

3   the purchase of which they had authorized.

4        41.     Motricity knew of said contractual relationships and intended to and did induce a

5   breach or disruption of the contractual relationships.

6        42.     Motricity intentionally interfered with said contractual relationship through

7   improper motives and/or means by knowingly and/or recklessly continually causing to be placed

8   on the cellular telephone bills of cellular telephone owners across the nation unauthorized

9   charges.

10       43.     Plaintiff and the Class suffered loss as a direct result of the conduct of Motricity.

11                              **THIRD CAUSE OF ACTION**

12       **Violation of the Washington Consumer Protection Act, RCW § 19.86.010 *et seq.***

13                           **on Behalf of Plaintiff and the Class**

14       44.     Plaintiff incorporates by reference the foregoing allegations.

15       45.     The Washington Consumer Protection Act ("CPA") declares unlawful (a) an

16   unfair or deceptive act or practice, (b) occurring in trade or commerce, (c) with a public interest

17   impact, (d) that causes injury to plaintiff.

18       46.     At all relevant times, Motricity has engaged in unfair and deceptive acts and

19   practices in the conduct of its business by misleadingly and deceptively facilitating the charging

20   of wireless telephone subscribers for unauthorized mobile content charges.

21       47.     Motricity's unfair and deceptive business acts and practices impact the public

22   interest. Motricity committed the unfair and deceptive acts described herein in the course of its

23   business as part of a pattern and generalized course of conduct. Motricity's unfair and deceptive

24   business acts and practices have affected, and continue to affect, a great many consumers.

COMPLAINT                                - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

18

48.    As a result of Motricity's unfair and deceptive acts and practices in the conduct of its business, plaintiff and the other members of the Class have suffered actual financial damages to their business and/or property.

49.    The State of Washington has an important interest in regulating the business activities of companies headquartered in Washington state. The policies complained of herein, that are the basis of the statutory claim in this cause of action, were developed in, set in, and/or emanated from Washington state.

50.    Unless Motricity is enjoined from its unfair and deceptive acts and practices as alleged herein, Motricity will continue to cause damage to consumers.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Susan Rynearson, on behalf of herself and the Class, prays for the following relief:

A.    Certify this case as a class action on behalf of the Class defined above; appoint Rynearson as class representatives; and appoint her counsel as class counsel;

B.    Declare that the actions of Motricity, as set out above, result in unjust enrichment, constitute tortious interference with a contract, and violate the CPA;

C.    Enter judgment against Motricity for all damages caused by its conduct and, to the extent authorized under the CPA, treble damages;

D.    Award restitution against Motricity for all money that Motricity has to which plaintiff and the Class are entitled in equity;

E.    Award plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.    Award plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

COMPLAINT                                    - 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

19

G.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of plaintiff and the Class; and

H.     Award such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.

Dated: June 24, 2008                    Respectfully submitted,

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

By: _s/   Clifford A. Cantor (WSBA # 17893)_
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:    (425) 868-7813
Fax:    (425) 868-7870

Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 West Jackson Blvd., Suite 1530
Chicago, Illinois 60604
Tel:    (312) 589-6370
Fax:    (312) 589-6378

*Attorneys for Plaintiff*

COMPLAINT                            - 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:       08-2-21227-1
Case Title:        Susan Rynearson vs Motricity, Inc.
Document Title:    SUMMONS & COMPLAINT
User's Name:       Clifford Cantor
Filed Date:        6/24/2008 1:15:18 PM

User Signed

Signed By:    Clifford Cantor
WSBA #:       17893
Date:         6/24/2008 1:12:20 PM

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

SUPERIOR COURT OF WASHINGTON
KING COUNTY

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiff, | Case No. |
| vs. | |
| MOTRICITY, INC., a Delaware corporation, | SUMMONS – 20-day |
| Defendant. | |

**TO THE DEFENDANT:**

A lawsuit has been started against you in the above-entitled court by Susan Rynearson, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what it asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

SUMMONS – 20-day                                                    - 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

22

1    You may demand that the plaintiff file this lawsuit with the court. If you do so, the

2  demand must be in writing and must be served upon the person signing this summons. Within

3  14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the

4  service on you of this summons and complaint will be void.

5    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6  that your written response, if any, may be served on time.

7    This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8  of Washington.

9
10    Dated: June 24, 2008          Respectfully submitted,

                                     LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

11                                   By:  s/  Clifford A. Cantor (WSBA # 17893)
                                     627 208th Ave. SE
12                                   Sammamish, WA  98074-7033
                                     Tel:   (425) 868-7813
13                                   Fax:   (425) 868-7870

14                                   Jay Edelson
                                     Myles McGuire
15                                   KAMBEREDELSON, LLC
                                     53 West Jackson Blvd., Suite 1530
16                                   Chicago, Illinois 60604
                                     Tel:   (312) 589-6370
17                                   Fax:   (312) 589-6378

18                                   *Attorneys for Plaintiff*

19
20
21
22
23
24

SUMMONS – 20-day                    - 2 -

23

FILED

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Susan Rynearson | NO. 08-2-21227-1    SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| vs                                    Plaintiff(s) | |
| Motricity, Inc. | ASSIGNED JUDGE  Washington            42 |
| | FILE DATE:                          06/24/2008 |
| Defendant(s) | TRIAL DATE:                        12/14/2009 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this *Order Setting Case Schedule* (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____|_____

       Print Name                               Sign Name

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**

All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] – especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [See *KCLR* 26], and for meeting the discovery cutoff date [See *KCLR* 37(g)].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**

A filing fee of $200 must be paid when any answer that includes additional claims is filed in an existing case.

**SHOW CAUSE HEARINGS FOR CIVIL CASES [King County Local Rule 4(g)]**

A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. A review of the case will be undertaken to confirm service of the original complaint. A *Show Cause Hearing* will be set before the Chief Civil or RJC judge if needed. The Order to Show Cause will be mailed to the plaintiff(s) or counsel to attend.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**

When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date, the Superior Court Clerk is authorized by KCLR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.**

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**

All parties to this action must keep the court informed of their addresses. When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**

A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. Any party filing a Statement must pay a $220 arbitration fee. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**

All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Rule 41.

**King County Local Rules are available for viewing at www.metrokc.gov/kcscc.**

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Tue  06/24/2008 | * |
| Confirmation of Service [See KCLR 4.1]. | Tue  07/22/2008 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. $220 arbitration fee must be paid | Tue  12/02/2008 | * |
| DEADLINE to file Confirmation of Joinder if not subject to Arbitration. [See KCLR 4.2(a) and Notices on Page 2]. Show Cause hearing will be set if Confirmation is not filed or Box 2 is checked. | Tue  12/02/2008 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area. [See KCLR 82(e)] | Tue  12/16/2008 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [See KCLR 26(b)]. | Mon  07/13/2009 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [See KCLR 26(b)]. | Mon  08/24/2009 | |
| DEADLINE for Jury Demand [See KCLR 38(b)(2)]. | Tue  09/08/2009 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [See KCLR 40(e)(2)]. | Tue  09/08/2009 | * |
| DEADLINE for Discovery Cutoff [See KCLR 37(g)]. | Mon  10/26/2009 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [See KCLR 16(c)]. | Mon  11/16/2009 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLR 16(a)(4)]. | Mon  11/23/2009 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [See KCLR 16(a)(2)] | Mon  11/23/2009 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [See KCLR 56; CR 56]. | Mon  11/30/2009 | |
| Joint Statement of Evidence [See KCLR 16(a)(5)]. | Mon  12/07/2009 | * |
| Trial Date [See KCLR 40]. | Mon  12/14/2009 | |

### III. ORDER

Pursuant to King County Local Rule 4 [KCLR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:  06/24/2008

**PRESIDING JUDGE**

Order Setting Civil Case Schedule (*ORSCS)

REV. 8/07    3

34

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE
READ THIS ORDER PRIOR TO CONTACTING YOUR ASSIGNED JUDGE

This case is assigned to the Superior Court Judge whose name appears in the caption of this *Schedule*. The assigned Superior Court Judge will preside over and manage this case for all pre-trial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

The following procedures hereafter apply to the processing of this case:

**APPLICABLE RULES:**

a. Except as specifically modified below, all the provisions of King County Local Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.

**CASE SCHEDULE AND REQUIREMENTS:**

A. Show Cause Hearing: A Show Cause Hearing will be held before the Chief Civil/Chief RJC judge if the case does not have confirmation of service on all parties, answers to all claims, crossclaims, or counterclaims as well as the confirmation of joinder or statement of arbitrability filed before the deadline in the attached case schedule. All parties will receive an Order to Show Cause that will set a specific date and time for the hearing. Parties and/or counsel who are required to attend will be named in the order.

B. Pretrial Order: An order directing completion of a Joint Confirmation of Trial Readiness Report will be mailed to all parties approximately six (6) weeks before trial. This order will contain deadline dates for the pretrial events listed in King County Local Rule 16:

1) Settlement/Mediation/ADR Requirement;
2) Exchange of Exhibit Lists;
3) Date for Exhibits to be available for review;
4) Deadline for disclosure of witnesses;
5) Deadline for filing Joint Statement of Evidence;
6) Trial submissions, such as briefs, Joint Statement of Evidence, jury instructions;
7) voir dire questions, etc;
8) Use of depositions at trial;
9) Deadlines for nondispositive motions;
10) Deadline to submit exhibits and procedures to be followed with respect to exhibits;
11) Witnesses -- identity, number, testimony;

C. Joint Confirmation regarding Trial Readiness Report: No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment), etc. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff/petitioner's counsel is responsible for contacting the other parties regarding said report.

D. Settlement/Mediation/ADR:

1) Forty five (45) days before the Trial Date, counsel for plaintiff shall submit a written settlement demand. Ten (10) days after receiving plaintiff's written demand, counsel for defendant shall respond (with a counteroffer, if appropriate).

2) Twenty eight (28) days before the Trial Date, a settlement/mediation/ADR conference shall have been held. **FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.**

E. Trial: Trial is scheduled for 9:00 a.m. on the date on the *Schedule* or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Court website at www.metrokc.gov/kcsc to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES:**

**A. Noting of Motions**

Dispositive Motions: All Summary Judgment or other motions that dispose of the case in whole or in part will be heard with oral argument before the assigned judge. The moving party must arrange with the courts a date and time for the hearing, consistent with the court rules.

King County Local Rule 7 and King County Local Rule 56 govern procedures for all summary judgment or other motions that dispose of the case in whole or in part. The local rules can be found at www.metrokc.gov/kcscc.

Nondispositive Motions: These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the *Note for Motion* should state "Without Oral Argument." King County Local Rule 7 governs these motions, which include discovery motions. The local rules can be found at www.metrokc.gov/kcscc.

Motions in Family Law Cases not involving children: Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions Calendar. King County Local Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.metrokc.gov/kcscc.

Emergency Motions: Emergency motions will be allowed only upon entry of an *Order Shortening Time*. However, emergency discovery disputes may be addressed by telephone call, and without written motion, if the judge approves.

Filing of Documents All original documents must be filed with the Clerk's Office. *The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.* The assigned judge's working copy must be delivered to his/her courtroom or to the judges' mailroom. Do not file working copies with the Motions Coordinator, except those motions to be heard on the Family Law Motions Calendar, in which case the working copies should be filed with the Family Law Motions Coordinator.

Original Proposed Order: Each of the parties must include in the working copy materials submitted on any motion an original proposed order sustaining his/her side of the argument. Should any party desire a copy of the order as signed and filed by the judge, a preaddressed, stamped envelope shall accompany the proposed order.

Presentation of Orders: All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final orders and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

C. Form: Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PETITIONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.

**PRESIDING JUDGE**

36

**FILED**

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| Susan Rynearson | NO. 08-2-21227-1 SEA |
| VS | |
| Motricity, Inc. | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(MSC) -**      TORT, NON-MOTOR VEHICLE

AREA DESIGNATION

**SEATTLE -**   Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

**FILED**

08 JUL 18 PM 1:05

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

1

2

3

4

5

6                SUPERIOR COURT OF WASHINGTON
7                          KING COUNTY

8  SUSAN RYNEARSON, individually and on         Case No. 08-2-21227-1 SEA
9  behalf of all others similarly situated,

10               Plaintiff,                      **AFFIDAVIT OF PROCESS SERVER**

11       vs.

12  MOTRICITY, INC., a Delaware corporation,

13               Defendant.

14
       Attached is an Affidavit of Process Server confirming service of process on defendant
15
   Motricity, Inc.
16
           Dated: July 18, 2008              Respectfully submitted,
17
                                             LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
18
                                             By:  _s/  Clifford A. Cantor (WSBA # 17893)____
19                                           627 208th Ave. SE
                                             Sammamish, WA  98074-7033
20                                           Tel:   (425) 868-7813
                                             Fax:   (425) 868-7870
21
                                             One of Attorneys for Plaintiff
22

23

24

AFFIDAVIT OF PROCESS SERVER                      - 1 -
No. 08-2-21227-1 SEA

# Affidavit of Process Server

| | | |
|---|---|---|
| SUSAN RYNEARSON | VS MOTRICITY, INC. | 08-2-21227-1 SEA |
| PLAINTIFF/PETITIONER | DEFENDANT/RESPONDENT | CASE NUMBER |

I BARRY EVELAND _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served MOTRICITY, INC. _____
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS & COMPLAINT _____

by leaving with SCOTT LASCALA _____ PROCESS AGENT _____ At
NAME                                    RELATIONSHIP

☐ Residence _____
ADDRESS                              CITY / STATE

☒ Business C/O THE CORPORATION TRUST CO. 1209 ORANGE ST. WILMINGTON, DE
ADDRESS                              CITY / STATE

On 7/1/08 _____ AT 11:15 AM _____
DATE                              TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
DATE

from _____
CITY          STATE          ZIP

**Manner of Service:**
☒ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other _____

**Service Attempts:** Service was attempted on: (1) _____ (2) _____
DATE          TIME                    DATE          TIME

(3) _____ (4) _____ (5) _____
DATE    TIME              DATE          TIME              DATE    TIME

AGE   35   Sex M   Race WH   Height 5'9   Weight 180   HAIR BLACK

_____
SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 1ST _____ day of JULY _____ ,2008.

_____
SIGNATURE OF NOTARY PUBLIC

**OFFICIAL SEAL**
KEVIN DUNN          NOTARY PUBLIC
NEW CASTLE COUNTY STATE OF DELAWARE        NOTARY PUBLIC for the state of   DELAWARE
MY COMMISSION EXPIRES NOV. 23, 2010

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

Case Number:       08-2-21227-1
Case Title:        RYNEARSON VS MOTRICITY INC
Document Title:    AFFIDAVIT OF PROCESS SERVER
User's Name:       Clifford Cantor
Filed Date:        7/18/2008 1:05:52 PM

User Signed

Signed By:     Clifford Cantor
WSBA #:        17893
Date:          7/18/2008 1:03:18 PM

**FILED**

08 JUL 18 PM 1:05

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

SUSAN RYNEARSON,

                    Plaintiff(s),

vs.

MOTRICITY, INC.

                    Defendant(s).

**NO. 08-2-21227-1 SEA**

CONFIRMATION OF SERVICE
SCOMIS CODE:  CS/CSSRV

[ X ]     All the named defendants or respondents have been served or have waived service.  (Check if appropriate; otherwise, check the box below.)

[   ]     One or more named defendants or respondents have not yet been served.  (If this box is checked, the following information must also be provided.)

The following defendants or respondents have been served or have waived service:_____

The following defendants or respondents have not yet been served:

_____

Reasons why service has not been obtained:

_____
_____

How service will be obtained:

_____
_____

Date by which service is expected to be obtained:

_____
_____

No other named defendants or respondents remain to be served.

  July 18, 2008                     s/  Clifford A. Cantor
Date                               Attorney or Party
                                      17893
                                      WSBA No.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:        08-2-21227-1
Case Title:         RYNEARSON VS MOTRICITY INC
Document Title:     OTHER  PROCESS SERVER RE CONFIRMATION OF SERVICE
User's Name:        Clifford Cantor
Filed Date:         7/18/2008 1:05:55 PM

User Signed

Signed By:     Clifford Cantor
WSBA #:        17893
Date:          7/18/2008 1:03:23 PM

FILED

2008 JUL 30  PM 2: 33

PERIOR COURT CLERK
SEATTLE WA.

1
2
3
4
5
6
7
8

SUPERIOR COURT OF WASHINGTON

9

FOR KING COUNTY

08-2-21227-1 SEA

10

SUSAN RYNEARSON, individually and
on behalf of a class of similarly situated
individuals,

No. 08-21227-1 SEA

11

12

Plaintiff,

Demand for Jury Trial

13

v.

**MOTRICITY, INC.'S NOTICE OF
NOTICE OF REMOVAL**

14

MOTRICITY, INC., a Delaware
corporation,

15

16

Defendant.

17

18

**TO:      THE CLERK OF THE COURT**

**AND TO:    ALL PARTIES, THROUGH COUNSEL OF RECORD**

19

20

    **PLEASE TAKE NOTICE**, that the Defendant, Motricity, Inc., has on this 30th day of

21

July, 2008, filed a Notice of Removal of this action to the United States District Court for the

22

Western District of Washington.  The original of the Notice of Removal has been filed with the

23

District Court.  A true and correct copy of the Notice of Removal is attached hereto as

24

**Exhibit A**.

25

    **PLEASE TAKE FURTHER NOTICE**, that, pursuant to the provisions of 28 U.S.C.

26

§ 1446, the filing of the Notice of Removal in the United States District Court, together with

MOTRICITY, INC.'S NOTICE OF NOTICE OF
REMOVAL - 1
Case No. 08-21227-1 SEA

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

**ORIGINAL**

1  the filing of this notice, automatically effects removal of this action and this Honorable Court

2  "shall proceed no further unless and until the case is remanded." *See* 28 U.S.C. § 1446(d).

3          DATED this 30th day of July, 2008.

4

5                                    DLA PIPER US LLP

6

7                                    Stellman Keehnel, WSBA No. 9309
                                     Kit Roth, WSBA No. 33059
8                                    DLA PIPER US LLP
                                     701 Fifth Avenue, Suite 7000
9                                    Seattle, WA  98104-7044
                                     Telephone:  206.839.4800
10                                   Fax:  206.839.4801
                                     E-mail:  stellman.keehnel@dlapiper.com
11                                             kit.roth@dlapiper.com

12                                   Attorneys for Defendant
                                     Motricity, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTRICITY, INC.'S NOTICE OF NOTICE OF                    DLA Piper US LLP
REMOVAL - 2                                        701 Fifth Avenue, Suite 7000
Case No. 08-21227-1 SEA                     Seattle, WA  98104-7044 * Tel: 206.839.4800

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that a copy of the foregoing is being served, via hand delivery, to:

3

4    Clifford A. Cantor
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE

5    Sammamish, WA 98074-7033;

6    Jay Edelson
Myles McGuire

7    Kamberedelson, LLC
53 West Jackson Blvd., Suite 1530

8    Chicago, IL 60604

9

10  on this 30th day of July, 2008.

                         Kit W. Roth, WSBA No. 33059

11                          DLA PIPER US LLP
701 Fifth Avenue, Suite 7000

12                          Seattle, WA 98104-7044
Telephone: 206.839.4800

13                          Fax: 206.839.4801
E-mail: kit.roth@dlapiper.com

14                          Attorneys for Defendant Motricity, Inc.

15

16

17

18

19

20

21

22

23

24  WEST\21481568.1

25

26

MOTRICITY, INC.'S NOTICE OF NOTICE OF
REMOVAL - 3
Case No. 08-21227-1 SEA

                    DLA Piper US LLP
                 701 Fifth Avenue, Suite 7000
        Seattle, WA 98104-7044 * Tel: 206.839.4800

BEST AVAILABLE IMAGE POSSIBLE

**C08-1138MJP**

JS 44 (Rev. 12/07)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
SUSAN RYNEARSON, individually and on behalf of all others similarly situated

### DEFENDANTS
MOTRICITY, INC.

(b) County of Residence of First Listed Plaintiff  Unknown
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  King
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

JUL 30 2008

(c) Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of Clifford A. Cantor, 627 208th Ave. SE, Sammamish, WA 98074-7033 (425) 868-7813

Attorneys (If Known)
See Attached

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 443 Housing/Accommodations | **Habeas Corpus:** | | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332, 1441, 1453
Brief description of cause:
Removal of class action complaint for injunctive relief/damages

### VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE  7/30/08
SIGNATURE OF ATTORNEY OF RECORD   WSBA NO. 33059

**FOR OFFICE USE ONLY**
RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

## ATTACHMENT TO CIVIL COVER SHEET

Attorneys for Defendant, Motricity, Inc.

STELLMAN KEEHNEL, WSBA No. 9309
KIT ROTH, WSBA No. 33059
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044
(206) 839-4888

SCOTT K. HAYNES
RUSSELL B. MORGAN
CHRISTOPHER E. THORSEN
BOULT, CUMMINGS, CONNERS & BERRY, PLC
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
(615) 244-2582

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

★   JUL 3 0 2008   ★

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                               DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE   **C08-1138** mJP

SUSAN RYNEARSON, individually and
on behalf of a class of similarly situated
individuals,

        Plaintiff,

      v.

MOTRICITY, INC., a Delaware
corporation,

        Defendant.

Case No._____

**NOTICE OF REMOVAL BY
DEFENDANT MOTRICITY, INC.**

TO:      **THE CLERK OF THE COURT**

AND TO:   **ALL PARTIES, THROUGH COUNSEL OF RECORD**

    **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and

Western District Local Rule 101, Defendant Motricity, Inc. ("Motricity") hereby removes the

above-captioned action from the Superior Court of Washington for King County to the United

States District Court for the Western District of Washington.  In support of its removal of this

action, Motricity states the following:

MOTRICITY, INC.'S NOTICE OF REMOVAL - 1

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800



# I.    INTRODUCTION

1.    On June 24, 2008, Plaintiff, Susan Rynearson, individually and on behalf of all others similarly situated, filed an action in the Superior Court of Washington for King County captioned *Rynearson v. Motricity, Inc.*, Case No. 08-2-21227-1.    Copies of the Summons and Complaint served on Motricity are attached as **Exhibit A**.

2.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Motricity pursuant to the provisions of 28 U.S.C. §§ 1441 and 1453.

3.    This case is properly removed to this Court pursuant to 28 U.S.C. § 1441, because Motricity has satisfied the procedural requirements for removal set forth in 28 U.S.C. § 1446, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d) and 1453.

4.    The Superior Court of Washington for King County is located within the United States District Court for the Western District of Washington.    Therefore venue is proper under 28 U.S.C. § 1441(a).

# II.    JURISDICTION PURSUANT TO CLASS ACTION FAIRNESS ACT

5.    This case is subject to removal pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 ("CAFA").    CAFA grants federal courts jurisdictions over class actions in which: (1) the aggregate number of proposed plaintiffs is 100 or greater; (2) any member of the plaintiff class is a citizen of a different state than the defendant, thus establishing the required minimal diversity; (3) the primary defendants are not States, State officials, or other governmental entities; and (4) the aggregate amount-in-controversy exceeds $5,000,000.    *See* 28 U.S.C. § 1332(d)(2)(A), (d)(5)(A) - (B), and (d)(6).

MOTRICITY, INC.'S NOTICE OF REMOVAL - 2

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

6.       These jurisdictional requirements are satisfied by the allegations of the Plaintiff's Complaint and certain facts related to the nature and extent of Motricity's business. As a result, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

7.       **This Action is a Class Action Consisting of More Than 100 Members:** In the Complaint, Plaintiff claims to represent a class of "all wireless telephone subscribers nationwide who suffered losses or damages as a result of Motricity facilitating and billing for mobile content products and services not authorized by the subscriber . . .." Complaint, ¶ 25. Plaintiff claims that the putative class consists of "thousands of individuals and other entities, making joinder impractical." Complaint, ¶ 26. Based on these allegations, the aggregate number of class members in the class that Plaintiff purports to represent is greater than 100 and thus satisfies 28 U.S.C. § 1332(d)(5)(B).

8.       **Plaintiff is a Citizen of a Different State Than Motricity:** Plaintiff is a citizen of the State of Florida. Complaint, ¶ 2. Motricity is, and was at the time Plaintiff commenced this action, a Delaware corporation with its principal place of business in the State of Washington. Complaint, ¶ 3. The minimal diversity required by CAFA is met because Plaintiff and Motricity are citizens of different states. *See* 28 U.S.C. § 1332(d)(2)(A).

9.       **Motricity is Not a State, State Official, or Other Governmental Entity:** As stated above, Motricity is a private corporation and thus 28 U.S.C. § 1332(d)(5)(A) is met.

10.      **The $5,000,000 Amount-in-Controversy Requirement has Been Met:** The allegations in the Complaint and the nature and extent of Motricity's business both indicate that well over $5,000,000 is in controversy in this action and, therefore, that CAFA's amount-in-controversy requirement has been met.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 3

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

1    11.    First, the Complaint seeks injunctive relief under the Washington Consumer

2  Protection Act, RCW § 19.86.010, *et seq.*   Complaint, ¶ 50, Prayer for Relief ¶ G.   The

3  Complaint seeks an injunction to force Motricity to obtain the consent of customers receiving

4  mobile content by processing "a unique 'access code' for each customer account, provided by

5  the carrier to the account holder and his/her authorized representatives at the time the account is

6  opened, and require that it be produced any time a third-party attempts to charge the account.

7  If a matching code is not provided, no charges would be included on the customer's billing

8  statement." Complaint, ¶¶ 16, 50.

9

10    12.    The potential cost to Motricity of complying with the injunction sought in the

11  Complaint exceeds $5,000,000, even without considering the damages sought by the Plaintiff.

12  As set forth in the Declaration of Paul Bock attached hereto as **Exhibit B** ("Bock Dec."), the

13  minimum cost to Motricity of complying with the injunctive relief sought in the Complaint is

14  $7,985,430.00.   Bock Dec, ¶ 6.   This amount, which is a reasonable estimate based on Mr.

15  Bock's detailed breakdown of work to be performed to comply with the injunctive relief

16  sought, consists of one-time development costs as well as maintenance costs to ensure

17  compliance with the injunctive relief for a period of five (5) years.   *Id.*   Moreover, five (5)

18  years is a very conservative estimate for the period of time over which Motricity would incur

19  maintenance expenses to comply with the injunction, as the injunction would be in effect

20  indefinitely.  Furthermore, as set forth in the Bock Declaration, the estimate of $7,985,430.00 is

21  a very conservative cost estimate and the actual cost to Motricity in complying with the

22  injunctive relief sought would likely substantially exceed this nearly $8 Million figure.

23

24

25

26

MOTRICITY, INC.'S NOTICE OF REMOVAL - 4

13.     Accordingly, the cost to Motricity of complying with the injunctive relief sought in the Complaint exceeds CAFA's $5,000,000.00 minimum amount in controversy. This is exclusive of the Complaint's allegations that the putative class plaintiffs are entitled to monetary damages in addition to the injunctive relief.   The additional consideration of monetary damages sought by the Plaintiff significantly increases the total amount in controversy -- an amount which far exceeds $8 Million, much less the $5 Million jurisdictional requirement.

14.     Because both the nature and extent of Motricity's business and Plaintiff's own Complaint prove by a preponderance of the evidence that the amount-in-controversy exceeds $5,000,000, the amount-in-controversy requirement of 28 U.S.C. § 1332(d) is satisfied.

15.     In summary, all of CAFA's jurisdictional requirements are satisfied by the allegations of the Plaintiff's Complaint and certain facts related to the nature and extent of Motricity's business.  As a result, this Court has subject matter jurisdiction over this action.

### III.     PROCEDURAL STATEMENT

16.     Because Plaintiff filed this action on June 24, 2008 and served Motricity on July 1, 2008, this Notice of Removal has been timely filed within thirty (30) days of service pursuant to 28 U.S.C. § 1446(b).  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999).

17.     Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for the Western District of Washington is proper because the Superior Court of Washington for King County is located within this District.

18.     Pursuant to 28 U.S.C. § 1446(a), Motricity will promptly provide notice of this Notice of Removal to the Superior Court of Washington for King County.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 5

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

19.     This Notice of Removal has been served upon all parties pursuant to 28 U.S.C. § 1446(d).

20.     Pursuant to 28 U.S.C. § 1446 and Local Rule 101(b), and the conjoined verification of Kit W. Roth, attached as **Exhibit C** is a copy of all pleadings and documents filed in the state court action (other than the Summons and Complaint, which are attached as **Exhibit A**).

21.     By removing this action to this Court, Motricity does not waive any defenses, objections or motions available to it under state and federal law. Motricity expressly reserves the right to require that the claims of Plaintiff and all members of the putative class be decided on an individual basis through arbitration.

WHEREFORE, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and Western District Local Rule 101, Motricity hereby removes the above-captioned action from the Superior Court of Washington for King County to the United States District Court for the Western District of Washington.

Respectfully submitted,

DLA PIPER US LLP

Stellman Keehnel, WSBA No. 9309
Kit W. Roth, WSBA No. 33059
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044
Telephone: 206.839.4800
Fax: 206.839.4801
E-mail: stellman.keehnell@dlapiper.com

Attorneys for Defendant Motricity, Inc.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 6

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that a copy of the foregoing is being served via hand delivery, to:

3

4
Clifford A. Cantor
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE

5
Sammamish, WA 98074-7033

6

7
Jay Edelson
Myles McGuire
Kamberedelson, LLC

8
53 West Jackson Blvd., Suite 1530
Chicago, IL 60604

9

on this the 30th day of July, 2008.

10

11
Kit W. Roth, WSBA No. 33059
DLA PIPER US LLP

12
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044

13
Telephone:  206.839.4800
Fax:  206.839.4801

14
E-mail:  stellman.keehnell@dlapiper.com

15
Attorneys for Defendant Motricity, Inc.

16

17

18

19

20

21

22

23

24

25

26

MOTRICITY, INC.'S NOTICE OF REMOVAL - 7

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

## VERIFICATION

Pursuant to Western District of Washington Local Rule 101(b), the undersigned counsel for Defendant Motricity, Inc. hereby verifies that the pleadings and other documents attached hereto as **Exhibit A** and **Exhibit C** are true and complete copies of the pleadings and documents in the state court proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED at Seattle, Washington this 30th day of July, 2008.


Kit W. Roth, WSBA No. 33059

Attorneys for Defendant Motricity, Inc.

WEST\21481571.1

MOTRICITY, INC.'S NOTICE OF REMOVAL - 8

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

# EXHIBIT A

PHOTOCOPY

FILED

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

## SUPERIOR COURT OF WASHINGTON
## KING COUNTY

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiff, | Case No. |
| vs. | **COMPLAINT** |
| MOTRICITY, INC., a Delaware corporation, | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff, by her attorneys, alleges as and for her class action complaint, upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, as follows:

### NATURE OF THE ACTION

1.     Plaintiff Susan Rynearson brings this class action complaint against Bellevue, Washington-headquartered defendant Motricity, Inc. for its unlawful practice of facilitating the charging of cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Motricity unlawfully collecting a significant sum of money from consumers nationwide, and to obtain redress for all persons injured by Motricity's conduct.

COMPLAINT                                          - 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

9

**PARTIES**

2.      Plaintiff Susan Rynearson is a resident of Florida.

3.      Defendant Motricity, Inc. is a leading aggregator in the United States. Motricity is a Delaware corporation headquartered at 601 108th Ave. NE, Suite 900, Bellevue, Washington 98004. Motricity does business throughout the State of Washington and the nation.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over the subject matter of this action pursuant to RCW § 2.08.010.

1.      Jurisdiction and venue are proper because Motricity is a corporation headquartered in King County and/or because the improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from Washington.

**CONDUCT COMPLAINED OF**

2.      This case arises from two closely related phenomena. The first is the capability of most cellular telephones not only to make and receive telephone calls but also to send and receive text messages, including – most significantly for present purposes – "premium" text message services. These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio, and participatory television).

3.      The second underlying phenomenon is this: Just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by wireless carriers. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they

COMPLAINT                                    - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax (425) 868-7870

10

1  do so with the help of third-party companies known as aggregators.  These aggregators act as

2  middle-men, representing numerous mobile content providers in arriving at the agreements that

3  allow them to use the billing and collection mechanisms of the wireless carriers.  In turn, both

4  the aggregators and the wireless carriers are compensated for their services to the mobile content

5  providers by retaining a substantial percentage of the amount for each premium mobile content

6  transaction.

7       4.       The rapid and largely unplanned growth of the premium mobile content industry

8  has led both to the above-described structure and a disastrous flaw within it.  That flaw –

9  understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content

10  providers – is an open secret within the industry, but little understood outside of it.  The billing

11  and collection systems established by companies including Motricity in aid of the premium

12  mobile content industry that enriches them are conspicuously free of any checks or safeguards to

13  prevent erroneous and unauthorized charges from being added to customers' bills.

14       5.       As Motricity knows, thousands of dollars have been collected on account of such

15  unauthorized charges for premium mobile content in the industry over the last few years.  And

16  while it has always been within the power of companies such as Motricity to institute simple and

17  effective measures that would prevent this, they have instead knowingly maintained the very

18  system that has allowed these erroneous charges.  Motricity has reaped and retained its

19  respective share of the improper collections.

20       6.       While the total sales in the nation of premium mobile content since its inception

21  amount to a significant sum, the business is still in its infancy.  The burgeoning industry has

22  already expanded from ordinary ringtones into mass media-related products such as interactive

23  radio and participatory voting at television and concert events and, most recently, into services

24

COMPLAINT                                    - 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

11

1   that enable cell phones to function as credit cards. Unchecked, Motricity's practices will injure

2   an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

3       7.    Unlike transactions made using checks and credit cards, which require a signature

4   or a highly private sixteen-digit credit card number, the only information a mobile content

5   provider needs to charge a consumer for its products is the consumer's cellular telephone

6   number. Once a mobile content provider has a consumer's cell phone number, it can cause that

7   consumer to be billed for services and products irrespective of whether the consumer actually

8   agreed to purchase them.

9       8.    Armed with only a cell phone number, the mobile content provider can simply

10   provide that number, along with an amount to be charged, to a billing aggregator (such as

11   Motricity). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the

12   bill associated with that cell phone number. *The charge will then appear on the consumer's cell*

13   *phone bill, often with only minimal, cryptic identifying information.*

14       9.    Because the protections normally present in consumer transactions – such as

15   signatures and private credit card numbers – are absent from this process, the likelihood of false

16   charges increases enormously. And because a substantial part of mobile content "sales" are

17   effected through web sites using misleading, oblique, or inadequately explained "consent"

18   procedures, that likelihood increases by another order of magnitude. Mobile content providers

19   have powerful financial incentives to collect as many cell phone numbers as possible but little

20   incentive to ensure that the owners of those numbers have truly agreed to purchase their goods

21   and services.

22       10.    In order to tap into the emerging mobile content marketplace and make content

23   services available to wireless consumers, content providers must first obtain access to wireless

24   carriers' mobile communications networks and frequently do so by "partnering" with

COMPLAINT      - 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

12

1 | aggregators – intermediary companies such as Motricity that offer content providers (its "content

2 | provider partners") direct access to the carriers through existing relationships. This allows

3 | content providers to focus on developing and marketing branded content, applications, and

4 | programs while aggregators manage the complex carrier relationships, distribution, billing, and

5 | customer service.

6 |      11.    As an aggregator, Motricity operates a mobile transaction network helping

7 | companies develop, deliver, and bill for mobile content services to compatible mobile devices

8 | throughout the State of Washington and the nation.

9 |      12.    By using its end-to-end technology platforms, its relationships with U.S. carriers,

10 | and other value-added services, aggregators have forged a crucial link between the wireless

11 | carriers and the mobile content providers. They have enabled the transformation of wireless into

12 | a marketing, content delivery, and collections process, while carving out a profitable role for

13 | themselves as very critical middlemen in this rapidly growing industry.

14 |      13.    Motricity has developed a vast distribution system that integrates into the wireless

15 | networks of some of the largest wireless carriers nationwide, providing direct connections to

16 | numerous mobile operators. As a result, Motricity is able to reach and bill many millions of

17 | wireless subscribers nationwide.

18 |      14.    While aggregators charge their content provider customers some upfront fees,

19 | their revenue is primarily generated through a "revenue share" on transactions for which they bill

20 | cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile

21 | content services offered by a content provider, the aggregator and/or the content provider cause

22 | said charge to be billed directly on the cellular telephone bill of the carrier's customer who

23 | currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

24 |

COMPLAINT            - 5 -

13

15.   The carrier then bills and collects the charge from its current subscriber, retains about a portion of the proceeds as its "revenue share," and then remits the balance to the aggregator who has direct access to its network, e.g., Motricity, which retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who then retains a percentage of the balance in the form of its own "revenue share" and then remits the balance to its mobile content provider client).

16.   Indeed, if Motricity wanted to end this wrongful billing, it could do so in an instant. All it would have to do to ensure that it is obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time the account is opened, and require that it be produced any time a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

17.   But instead of implementing such a simple safeguard, Motricity has intentionally created and maintained a system that encourages wrongdoing at every step. Such system results in the wrongful charging of small amounts of money to large numbers of people.

### FACTS RELATING TO PLAINTIFF RYNEARSON

18.   In or about 2005, plaintiff Rynearson purchased new cell phone service for her personal use from an established wireless carrier.

19.   On that same day, in exchange for a cellular telephone service plan, Rynearson agreed to pay her carrier a set monthly fee for a period of approximately 12 months.

20.   In or about 2007, Rynearson's cell phone account was charged or caused to be charged by Motricity for unwanted mobile content services on behalf of third-parties.

COMPLAINT                                          - 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ◆ Fax: (425) 868-7870

14

1   21.     At no time did Rynearson authorize the purchase of or billing for these products

2   and services by Motricity or anyone else and at no time did Rynearson consent to sending of so-

3   called premium text messages to her cellular telephone.

4   22.     During the relevant time period, Motricity caused Rynearson to be charged

5   service fees for so-called premium text messages.

6   23.     At no time did Rynearson authorize Motricity or anyone else to bill her for these

7   charges and at no time did Motricity verify Rynearson's purported authorization of these

8   charges.

9   24.     Motricity has yet to provide a full refund of the unauthorized charges consisting

10  of the premium text message charges, ordinary text messages, data charges, back interest,

11  implement adequate procedures to ensure that such unauthorized charges would not appear in

12  future billing periods, and/or an assurance that such unauthorized charges would not appear in

13  future billing periods.

14                              **CLASS ALLEGATIONS**

15  25.     Rynearson brings this action pursuant to CR 23 on behalf of herself and a class

16  consisting of all wireless telephone subscribers nationwide who suffered losses or damages as a

17  result of Motricity facilitating and billing for mobile content products and services not authorized

18  by the subscriber; provided, however, that the following are excluded from this proposed Class:

19  (i) the defendant, and (ii) any employee of a defendant.

20  26.     The Class consists of thousands of individuals and other entities, making joinder

21  impractical.

22  27.     The claims of plaintiff Rynearson are typical of the claims of all of the other

23  members of the Class.

24

COMPLAINT                                    - 7 -

15

28.   Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel has any interest adverse to those of the other members of the Class.

29.   Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

30.   Motricity has acted and failed to act on grounds generally applicable to plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

31.   The factual and legal bases of Motricity's liability to plaintiff and to the other members of the Class are the same, resulting in injury to the plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Motricity's wrongful conduct.

32.   There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a)   whether Motricity's conduct described herein resulted in unjust enrichment; and

COMPLAINT

- 8 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

16

1          (b)     whether Motricity's conduct constitutes unfair and deceptive acts or

2          practices.

3     33.    The questions of law and fact common to the members of the class predominate

4  over any questions affecting only individual members and a class action is superior to all other

5  available methods for the fair and efficient adjudication of this controversy.

6                        **FIRST CAUSE OF ACTION**

7                     **Restitution / Unjust Enrichment**

8                  **on Behalf of Plaintiff and the Class**

9     34.    Plaintiff incorporates by reference the foregoing allegations.

10    35.    A benefit has been conferred upon Motricity by plaintiff and the Class. Motricity

11  has received and retains money belonging to plaintiff and the Class resulting from its facilitation

12  of billing and collecting significant amounts of money in unauthorized mobile content charges.

13    36.    Motricity appreciates or has knowledge of said benefit.

14    37.    Motricity unjustly gained money from plaintiff and the Class as a direct result of

15  Motricity's conduct.

16    38.    Under principles of equity and good conscience, Motricity should not be

17  permitted to retain the money belonging to plaintiff and the Class which Motricity has unjustly

18  received as a result of its actions.

19                        **SECOND CAUSE OF ACTION**

20                   **Tortious Interference with a Contract**

21                  **on Behalf of Plaintiff and the Class**

22    39.    Plaintiff incorporates by reference the foregoing allegations.

23    40.    Plaintiff and the Class had contractual relationships with their wireless carriers

24  whereby they agreed to pay a certain sum of money in exchange for activation of their cellular

COMPLAINT                           - 9 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

17

1  telephone accounts and their carriers' promise to provide various communication and related

2  services to plaintiff and the Class and to bill plaintiff and the Class only for products or services

3  the purchase of which they had authorized.

4      41.    Motricity knew of said contractual relationships and intended to and did induce a

5  breach or disruption of the contractual relationships.

6      42.    Motricity intentionally interfered with said contractual relationship through

7  improper motives and/or means by knowingly and/or recklessly continually causing to be placed

8  on the cellular telephone bills of cellular telephone owners across the nation unauthorized

9  charges.

10      43.    Plaintiff and the Class suffered loss as a direct result of the conduct of Motricity.

11           **THIRD CAUSE OF ACTION**

12    **Violation of the Washington Consumer Protection Act, RCW § 19.86.010 *et seq.***

13          **on Behalf of Plaintiff and the Class**

14      44.    Plaintiff incorporates by reference the foregoing allegations.

15      45.    The Washington Consumer Protection Act ("CPA") declares unlawful (a) an

16  unfair or deceptive act or practice, (b) occurring in trade or commerce, (c) with a public interest

17  impact, (d) that causes injury to plaintiff.

18      46.    At all relevant times, Motricity has engaged in unfair and deceptive acts and

19  practices in the conduct of its business by misleadingly and deceptively facilitating the charging

20  of wireless telephone subscribers for unauthorized mobile content charges.

21      47.    Motricity's unfair and deceptive business acts and practices impact the public

22  interest. Motricity committed the unfair and deceptive acts described herein in the course of its

23  business as part of a pattern and generalized course of conduct. Motricity's unfair and deceptive

24  business acts and practices have affected, and continue to affect, a great many consumers.

COMPLAINT      - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

18

48.     As a result of Motricity's unfair and deceptive acts and practices in the conduct of its business, plaintiff and the other members of the Class have suffered actual financial damages to their business and/or property.

49.     The State of Washington has an important interest in regulating the business activities of companies headquartered in Washington state.  The policies complained of herein, that are the basis of the statutory claim in this cause of action, were developed in, set in, and/or emanated from Washington state.

50.     Unless Motricity is enjoined from its unfair and deceptive acts and practices as alleged herein, Motricity will continue to cause damage to consumers.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Susan Rynearson, on behalf of herself and the Class, prays for the following relief:

A.     Certify this case as a class action on behalf of the Class defined above; appoint Rynearson as class representatives; and appoint her counsel as class counsel;

B.     Declare that the actions of Motricity, as set out above, result in unjust enrichment, constitute tortious interference with a contract, and violate the CPA;

C.     Enter judgment against Motricity for all damages caused by its conduct and, to the extent authorized under the CPA, treble damages;

D.     Award restitution against Motricity for all money that Motricity has to which plaintiff and the Class are entitled in equity;

E.     Award plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Award plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

COMPLAINT                                    - 11 -

19

G.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of plaintiff and the Class; and

H.    Award such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.

Dated: June 24, 2008

Respectfully submitted,

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

By:  <u>s/  Clifford A. Cantor (WSBA # 17893)</u>
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:    (425) 868-7813
Fax:    (425) 868-7870

Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 West Jackson Blvd., Suite 1530
Chicago, Illinois·60604
Tel:    (312) 589-6370
Fax:    (312) 589-6378

*Attorneys for Plaintiff*

COMPLAINT

- 12 -

Case Number:       08-2-21227-1
Case Title:        Susan Rynearson vs Motricity, Inc.
Document Title:    SUMMONS & COMPLAINT
User's Name:       Clifford Cantor
Filed Date:        6/24/2008 1:15:18 PM

User Signed

Signed By:    Clifford Cantor
WSBA #:       17893
Date:         6/24/2008 1:12:20 PM

SUPERIOR COURT OF WASHINGTON
KING COUNTY

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MOTRICITY, INC., a Delaware corporation,<br><br>Defendant. | CLASS ACTION<br><br>Case No.<br><br>**SUMMONS – 20-day** |

**TO THE DEFENDANT:**

A lawsuit has been started against you in the above-entitled court by Susan Rynearson, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what it asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

SUMMONS – 20-day

- 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    You may demand that the plaintiff file this lawsuit with the court.  If you do so, the

2    demand must be in writing and must be served upon the person signing this summons.  Within

3    14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the

4    service on you of this summons and complaint will be void.

5    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6    that your written response, if any, may be served on time.

7    This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8    of Washington.

9

   Dated: June 24, 2008          Respectfully submitted,

10
                                 LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
11
                                 By:   s/  Clifford A. Cantor (WSBA # 17893)
                                 627 208th Ave. SE
12                               Sammamish, WA  98074-7033
                                 Tel:   (425) 868-7813
13                               Fax:   (425) 868-7870

14                               Jay Edelson
                                 Myles McGuire
15                               KAMBEREDELSON, LLC
                                 53 West Jackson Blvd., Suite 1530
16                               Chicago, Illinois 60604
                                 Tel:   (312) 589-6370
17                               Fax:   (312) 589-6378

18                               *Attorneys for Plaintiff*

19

20

21

22

23

24

SUMMONS -- 20-day                    - 2 -

23

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN RYNEARSON, individually and )
on behalf of all others similarly situated, )
)
      Plaintiff, )
)
v. )     Case No. _____
)
MOTRICITY, INC., a Delaware )
corporation, )
)
      Defendant. )

## DECLARATION OF PAUL BOCK

I, Paul Bock, having been duly sworn, according to law, do hereby depose and state as follows:

1.    I am an adult resident of Cary, North Carolina, and make this declaration from my personal knowledge and for use in this case.

2.    I am the Director of Engineering for Motricity, Inc. ("Motricity") and have served in this capacity for a year and a half. I have extensive knowledge of the development and monthly efforts to sustain various aspects of the mobile content that Motricity provides to its end users.

3.    I have reviewed Paragraph 16 of the Complaint. In order to comply with the relief requested therein, Motricity would be forced to effectuate a system whereby a unique "access code" for each customer account would be provided.

4.    Below is an itemized breakdown of the development costs (one time), hardware and licensing costs (one time), and monthly maintenance costs (over five years) of such a

DECLARATION OF PAUL BOCK
1915229 v1
104467-060 07/30/08

          - 1 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

24

system. The costs listed are the lowest reasonable estimated costs for this project, but the actual costs would likely be greater than those set forth below.

5.   The itemized list explains and describes: (1) the work required to create, develop, and maintain such an access code; (2) the hours required to accomplish each part of such a project; (3) the cost of each individual aspect of the project, based on the reasonable contract rate for each of the services listed; and (4) the lowest estimated total cost.

6.   As is evident below, the most conservative estimate of the total cost of any system that would give each Motricity user a unique "access code" for his/her account in an attempt to prevent unauthorized billing is $7,985,430.00.

## Motricity System Changes                    Costs

### One-Time Development Costs

#### Part One

**Architect – Contractor:**

\* Create requirements and general architecture

400 hours (50 person days) at $125/hour                    $50,000.00

**Developers – Contractor:**

\* Application programming interface ("API") for content provider to request an accessCode.  This will trigger an end user registration where Motricity manages opting in the end user.  The user is opted in via an SMS message to the phone.  User is given the accessCode for this purchase and upon responding "Yes" to accept the charges via mobile origination ("MO"), content provider is granted the accessCode.
  - Send SMS opt in and track responses
  - Maintain session as end user could be in multiple "opt-ins"
  - Create system to post notification of access code to content provider
  - Support HyperText Transfer Protocol ("HTTP") API calls
  - Support Short Message Peer-to-peer Protocal ("SMPP") calls
  - Support Wireless Application Protocol ("WAP") session (accessCode to be entered into WAP site via end user). End user browser is re-directed to Motricity to ensure opt in.

DECLARATION OF PAUL BOCK
1915229 v1
104467-060 07/30/08

- 2 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

- Support HTTP session (accessCode to be entered into web site via end user).  End user browser is re-directed to Motricity to ensure opt in.

* Internal API to retrieve accessCode given a carrier and a phone number for validation in Motricity system.

* Test tools

2,200 hours (275 person days) at $125/hour contract rate

$275,000.00

**QA – Contractor::**

* The majority of the work will require either new code or changes to core modules

1,120 hours (140 person days) at $95/hour                    $106,400.00

**DBA – Contractor:**

* Schema/system to archive accessCodes

* Schema/system to archive WAP/WEB sessions

* Modifying and adding data base ("DB") schemas to support accessCode

720 hours (65 person days) at $125/hour                    $65,000.00

**Product Manager:**

* Documentation of WEB/WAP/SMS/HTTP interfaces

160 hours (20 person days) at $125/hour                    $20,000.00

**Project Manager – Contractor:**

* Manage entire project.

2,200 hours (275 person days) at $125/hour                    $275,000.00

## Development Part One Total:          $791,400.00

## Part Two

**Architect - Contractor:**

* Create requirements and general architecture

240 hours (30 person days) at $125/hour                    $30,000.00

**Developers – Contractor:**                                   $395,000.00

DECLARATION OF PAUL BOCK
1915229 v1
104467-060 07/30/08

- 3 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

26

1

2

* Add accessCode parameter to all interfaces and APIs for all supported versions (SMPP and HTTP)

3

* Update business service tier ("BST") (to use new parameter(s))

*BST modified to track accessCode violations and lock out content providers

4

5

*Internal systems to support new access parameter

6

- Subscriptions Management

- Deliver Engine

7

- Campaign Manager

8

- Media Server

9

- Subscriber Management

- Billing Systems Billing Action Processor/Billing Action Service ("BAP/BAS")

10

11

- Each Billing Interface

*Notifications updated to alert Content Provider for invalid accessCodes

12

13

    Total Developers Cost: 3,160 hours(395 person days) x $125/hour.contract rate

14

15

**QA – Contractor**

16

*Code changes to core modules, including full QA regression. (395 person days)

17

18

    Total QA Cost:  3,160 hours (395 person days) x $95/hour contract rate     **$300,200.00**

19

20

21

**Project Manager – Contractor**

*Project management services over all modules (395 person days)

22

    Total Project Manager Cost:  3,160 hours (395 person days) x $125/hour contract rate     **$395,000.00**

23

24

**Gateway Operations**

25

*Migration of content providers to new API (30 person days)     **$28,560.00**

26

    Total Gateway Operations Cost: 240 hours (30 person days) x

MOTRICITY, INC.'S NOTICE OF REMOVAL - 1
1915229 v1
104467-060 07/30/08      - 4 -      DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

27

1

2          $119/hour contract rate

3     **Product Manager -- Contractor**

4     *Documentation updated for SMPP, HTTP APIs

      *Documentation created to aid in content provider migration

5          Total Product Manager Cost: 90 hours (15 person days) x          $11,250.00
6          $125/hour contract rate

7

8     **DBA -- Contractor**

9     *All reports updated to track "Invalid Access Code Billings"

10    *Securing accessCode master DB with encryption/secure hardware,
      etc.

11    *Modifying and adding DB schemas to support accessCode

12         Total DBA Cost: 720 hours (90 person days) x $125/hour
13         contract rate                                               $90,000.00

14

15                    **Development Part Two Total:**    **$1,250,010.00**

16              **5 Year Sustainment Costs**

17    **Developers -- Contractor**

18         480 hours (60 person days) at $125/hour = $60,000 per month
           for 5 years                                                 $3,600,000.00
19
      **Ops -- Contractor**
20
           160 hours (20 person days) at $119/hour = $19,067 per month
21         for 5 years                                                 $1,144,020.00

22    **DBA -- Contractor**

23         160 hours (20 person days) at $125/hour = $20,000 per month
           for 5 years                                                 $1,200,000.00
24
                            **Sustainment Total:**    **$5,944,020.00**
25

26

28

1

2      **Total Project Cost:**          **$7,985,430**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF PAUL BOCK
1915229 v1
104467-060 07/30/08                    - 6 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

29

1        I declare under penalty of perjury that the foregoing is true and correct.  Executed on July

2    _30_, 2008.

3

4

5    PAUL BOCK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   1915229 v1
104467-060 07/29/08

- 7 -

DECLARATION OF PAUL BOCK

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

30

# EXHIBIT C

PHOTOCOPY

FILED

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

Susan Rynearson

VS

Motricity, Inc.

NO. 08-2-21227-1 SEA

CASE INFORMATION COVER SHEET
AND AREA DESIGNATION

CAUSE OF ACTION

(MSC) - TORT, NON-MOTOR VEHICLE

AREA DESIGNATION

SEATTLE - Defined as all King County north of Interstate 90 and including all
of Interstate 90 right of way, all of the cities of Seattle, Mercer
Island, Issaquah, and North Bend, and all of Vashon and Maury
Islands.

**FILED**

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | | |
|---|---|---|
| Susan Rynearson | | NO.  08-2-21227-1    SEA |
| | | Order Setting Civil Case Schedule (*ORSCS) |
| vs | Plaintiff(s) | |
| Motricity, Inc. | | ASSIGNED JUDGE  Washington_____ 42 |
| | | FILE DATE:                          06/24/2008 |
| | Defendant(s) | TRIAL DATE:                     12/14/2009 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____ | _____
          Print Name                                          Sign Name

Order Setting Civil Case Schedule (*ORSCS)                                    REV. 8/07        1

I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [KCLR] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [See KCLR 26], and for meeting the discovery cutoff date [See KCLR 37(g)].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of $200 must be paid when any answer that includes additional claims is filed in an existing case.

**SHOW CAUSE HEARINGS FOR <u>CIVIL</u> CASES** [King County Local Rule 4(g)]
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. A review of the case will be undertaken to confirm service of the original complaint. A *Show Cause Hearing* will be set before the Chief Civil or RJC judge if needed. The Order to Show Cause will be mailed to the plaintiff(s) or counsel to attend.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date,** the Superior Court Clerk is authorized by KCLR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. Any party filing a Statement must pay a $220 arbitration fee. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Rule 41.

**King County Local Rules are available for viewing at www.metrokc.gov/kcscc.**

Order Setting Civil Case Schedule (*ORSCS)                                         REV. 8/07      2

33

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Tue  06/24/2008 | * |
| Confirmation of Service [See KCLR 4.1]. | Tue  07/22/2008 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. $220 arbitration fee must be paid | Tue  12/02/2008 | * |
| DEADLINE to file Confirmation of Joinder if not subject to Arbitration. [See KCLR 4.2(a) and Notices on Page 2]. Show Cause hearing will be set if Confirmation is not filed or Box 2 is checked. | Tue  12/02/2008 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area. [See KCLR 82(e)] | Tue  12/16/2008 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [See KCLR 26(b)]. | Mon  07/13/2009 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [See KCLR 26(b)]. | Mon  08/24/2009 | |
| DEADLINE for Jury Demand [See KCLR 38(b)(2)]. | Tue  09/08/2009 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [See KCLR 40(e)(2)]. | Tue  09/08/2009 | * |
| DEADLINE for Discovery Cutoff [See KCLR 37(g)]. | Mon  10/26/2009 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [See KCLR 16(c)]. | Mon  11/16/2009 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLR 16(a)(4)]. | Mon  11/23/2009 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [See KCLR 16(a)(2)]. | Mon  11/23/2009 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [See KCLR 56; CR 56]. | Mon  11/30/2009 | |
| Joint Statement of Evidence [See KCLR 16(a)(5)]. | Mon  12/07/2009 | * |
| Trial Date [See KCLR 40]. | Mon  12/14/2009 | |

### III. ORDER

Pursuant to King County Local Rule 4 [KCLR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:   06/24/2008

PRESIDING JUDGE

Order Setting Civil Case Schedule (*ORSCS)

REV. 8/07   3

### IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

READ THIS ORDER PRIOR TO CONTACTING YOUR ASSIGNED JUDGE

This case is assigned to the Superior Court Judge whose name appears in the caption of this *Schedule*. The assigned Superior Court Judge will preside over and manage this case for all pre-trial matters.

COMPLEX LITIGATION: If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

The following procedures hereafter apply to the processing of this case:

APPLICABLE RULES:

a. Except as specifically modified below, all the provisions of King County Local Rules 4 through-26 shall apply to the processing of civil cases before Superior Court Judges.

CASE SCHEDULE AND REQUIREMENTS:

A. Show Cause Hearing: A Show Cause Hearing will be held before the Chief Civil/Chief RJC judge if the case does not have confirmation of service on all parties, answers to all claims, crossclaims, or counterclaims as well as the confirmation of joinder or statement of arbitrability filed before the deadline in the attached case schedule. All parties will receive an *Order to Show Cause* that will set a specific date and time for the hearing. Parties and/or counsel who are required to attend will be named in the order.

B. Pretrial Order: An order directing completion of a Joint Confirmation of Trial Readiness Report will be mailed to all parties approximately six (6) weeks before trial. This order will contain deadline dates for the pretrial events listed in King County Local Rule 16:

1) Settlement/Mediation/ADR Requirement;
2) Exchange of Exhibit Lists;
3) Date for Exhibits to be available for review;
4) Deadline for disclosure of witnesses;
5) Deadline for filing Joint Statement of Evidence;
6) Trial submissions, such as briefs, Joint Statement of Evidence, jury instructions;
7) voir dire questions, etc;
8) Use of depositions at trial;
9) Deadlines for nondispositive motions;
10) Deadline to submit exhibits and procedures to be followed with respect to exhibits;
11) Witnesses -- identity, number, testimony;

C. Joint Confirmation regarding Trial Readiness Report: No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment), etc. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff/petitioner's counsel is responsible for contacting the other parties regarding said report.

D. Settlement/Mediation/ADR:

1) Forty five (45) days before the Trial Date, counsel for plaintiff shall submit a written settlement demand. Ten (10) days after receiving plaintiff's written demand, counsel for defendant shall respond (with a counteroffer, if appropriate).

2) Twenty eight (28) days before the Trial Date, a settlement/mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

E. Trial: Trial is scheduled for 9:00 a.m. on the date on the *Schedule or as soon thereafter as convened by the court*. The Friday before trial, the parties should access the King County Superior Court website at www.metrokc.gov/kcsc to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES:**

A. **Noting of Motions**

Dispositive Motions: All Summary Judgment or other motions that dispose of the case in whole or in part will be heard with oral argument before the assigned judge. The moving party must arrange with the courts a date and time for the hearing, consistent with the court rules.

King County Local Rule 7 and King County Local Rule 56 govern procedures for all summary judgment or other motions that dispose of the case in whole or in part. The local rules can be found at www.metrokc.gov/kcscc.

Nondispositive Motions: These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the *Note for Motion* should state "Without Oral Argument." King County Local Rule 7 governs these motions, which include discovery motions. The local rules can be found at www.metrokc.gov/kcscc.

Motions in Family Law Cases not involving children: Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions Calendar. King County Local Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.metrokc.gov/kcscc.

Emergency Motions: Emergency motions will be allowed only upon entry of an *Order Shortening Time*. However, emergency discovery disputes may be addressed by telephone call, and without written motion, if the judge approves.

Filing of Documents All original documents must be filed with the Clerk's Office. *The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.* The assigned judge's working copy must be delivered to his/her courtroom or to the judges' mailroom. Do not file working copies with the Motions Coordinator, except those motions to be heard on the Family Law Motions Calendar, in which case the working copies should be filed with the Family Law Motions Coordinator.

Original Proposed Order: Each of the parties must include in the working copy materials submitted on any motion an original proposed order sustaining his/her side of the argument. Should any party desire a copy of the order as signed and filed by the judge, a preaddressed, stamped envelope shall accompany the proposed order.

Presentation of Orders: All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final orders and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

C. **Form:** Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PETITIONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.

_____

**PRESIDING JUDGE**

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

SUSAN RYNEARSON, individually and
on behalf of a class of similarly situated
individuals,

        Plaintiff,

    v.

MOTRICITY, INC., a Delaware
corporation,

        Defendant.

Case No. _CO8-1138 MJP_

**MOTRICITY, INC.' S CORPORATE
DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1, Motricity, Inc. ("Motricity") makes the following disclosures:

    1.      All parent corporations, if any, of the named party:

        (i)    None

    2.      All publicly held companies, if any, that own ten percent (10%) or more of the named party's stock:

        (i)    None

MOTRICITY, INC'S CORPORATE DISCLOSURE
STATEMENT - 1

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

COPY

1    Dated this 30th day of July, 2008.

2                                 Respectfully submitted,

3                                 DLA PIPER US LLP

4

5

6                                 Stellman Keehnel, WSBA No. 9309
                                  Kit W. Roth, WSBA No. 33059
7                                 DLA PIPER US LLP
                                  701 Fifth Avenue, Suite 7000
8                                 Seattle, WA 98104-7044
                                  Telephone: 206.839.4800
9                                 Fax: 206.839.4801
                                  E-mail: stellman.keehnell@dlapiper.com

10                                Attorneys for Defendant Motricity, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTRICITY, INC.'S CORPORATE DISCLOSURE
STATEMENT - 2

1

## CERTIFICATE OF SERVICE

2
    I hereby certify that a copy of the foregoing is being served via hand delivery, to:

3

4
Clifford A. Cantor
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE

5
Sammamish, WA 98074-7033

6
Jay Edelson
Myles McGuire

7
Kamberedelson, LLC
53 West Jackson Blvd., Suite 1530

8
Chicago, IL 60604

9

10
on this the 30th day of July, 2008.

11
Kit W. Roth, WSBA No. 33059
DLA PIPER US LLP

12
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044

13
Telephone: 206.839.4800
Fax: 206.839.4801

14
E-mail: stellman.kcehnell@dlapiper.com

15
Attorneys for Defendant Motricity, Inc.

16

17
WEST\21482475.1

18

19

20

21

22

23

24

25

26

MOTRICITY, INC.'S CORPORATE DISCLOSURE
STATEMENT - 3

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

FILED

08 JUL 30 PM 4: 23

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

1
2
3
4
5
6
7

8              SUPERIOR COURT OF WASHINGTON

9                   FOR KING COUNTY

10   SUSAN RYNEARSON, individually and          No. 08-21227-1 SEA
     on behalf of a class of similarly situated
11   individuals,

12              Plaintiff,                       Demand for Jury Trial

13        v.                                     **MOTRICITY, INC.'S AMENDED
                                                 NOTICE OF NOTICE OF REMOVAL**
14   MOTRICITY, INC., a Delaware
     corporation,
15
16              Defendant.

17   **TO:         THE CLERK OF THE COURT**

18   **AND TO:     ALL PARTIES, THROUGH COUNSEL OF RECORD**

19        PLEASE TAKE NOTICE, that the Defendant, Motricity, Inc., has on this 30th day of

20   July, 2008, filed a Notice of Removal of this action to the United States District Court for the

21   Western District of Washington.  The original of the Notice of Removal has been filed with the

22   District Court.   A true and correct copy of the Notice of Removal is attached hereto as

23   **Exhibit A**.
24
          PLEASE TAKE FURTHER NOTICE, that, pursuant to the provisions of 28 U.S.C.
25
     § 1446, the filing of the Notice of Removal in the United States District Court, together with
26

MOTRICITY, INC.'S NOTICE OF NOTICE OF                DLA Piper US LLP
REMOVAL - 1                                       701 Fifth Avenue, Suite 7000
Case No. 08-21227-1 SEA                     Seattle, WA 98104-7044 * Tel: 206.839.4800



1 the filing of this notice, automatically effects removal of this action and this Honorable Court

2 "shall proceed no further unless and until the case is remanded." *See* 28 U.S.C. § 1446(d).

3       DATED this 30th day of July, 2008.

4

5                     DLA PIPER US LLP

6

7                     Stellman Keehnel, WSBA No. 9309

8                     Kit Roth, WSBA No. 33059
                    DLA PIPER US LLP

9                     701 Fifth Avenue, Suite 7000
                    Seattle, WA  98104-7044

10                     Telephone: 206.839.4800
                    Fax:  206.839.4801

11                     E-mail:  stellman.keehnel@dlapiper.com
                            kit.roth@dlapiper.com

12                     Attorneys for Defendant

13                     Motricity, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTRICITY, INC.'S NOTICE OF NOTICE OF
REMOVAL - 2
Case No. 08-21227-1 SEA

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

1

## CERTIFICATE OF SERVICE

2

I hereby certify that a copy of the foregoing is being served, via hand delivery, to:

3

4
Clifford A. Cantor
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE
5
Sammamish, WA 98074-7033;

6
Jay Edelson
Myles McGuire
7
Kamberedelson, LLC
53 West Jackson Blvd., Suite 1530
8
Chicago, IL 60604

9

10
on this 30th day of July, 2008.

Kit W. Roth, WSBA No. 33059
11
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
12
Seattle, WA  98104-7044
Telephone:  206.839.4800
13
Fax:  206.839.4801
E-mail:  kit.roth@dlapiper.com

14
Attorneys for Defendant Motricity, Inc.

15

16

17

18

19

20

21

22

23

24
WEST\21481568.1
25

26

MOTRICITY, INC.'S NOTICE OF NOTICE OF
REMOVAL - 3
Case No. 08-21227-1 SEA

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

# EXHIBIT A

1

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

★   JUL 3 0 2008   ★

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

RECEIVED

2009 JUL 30  PM 2: 01

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE   **C08-1138**MJP

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of a class of similarly situated individuals, | Case No. _____ |
| Plaintiff, | NOTICE OF REMOVAL BY DEFENDANT MOTRICITY, INC. |
| v. | |
| MOTRICITY, INC., a Delaware corporation, | |
| Defendant. | |

TO:        THE CLERK OF THE COURT

AND TO:    ALL PARTIES, THROUGH COUNSEL OF RECORD

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and Western District Local Rule 101, Defendant Motricity, Inc. ("Motricity") hereby removes the above-captioned action from the Superior Court of Washington for King County to the United States District Court for the Western District of Washington. In support of its removal of this action, Motricity states the following:

MOTRICITY, INC.'S NOTICE OF REMOVAL - 1

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206 839.4800

## I.   INTRODUCTION

1.      On June 24, 2008, Plaintiff, Susan Rynearson, individually and on behalf of all others similarly situated, filed an action in the Superior Court of Washington for King County captioned *Rynearson v. Motricity, Inc.*, Case No. 08-2-21227-1.   Copies of the Summons and Complaint served on Motricity are attached as **Exhibit A**.

2.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Motricity pursuant to the provisions of 28 U.S.C. §§ 1441 and 1453.

3.      This case is properly removed to this Court pursuant to 28 U.S.C. § 1441, because Motricity has satisfied the procedural requirements for removal set forth in 28 U.S.C. § 1446, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d) and 1453.

4.      The Superior Court of Washington for King County is located within the United States District Court for the Western District of Washington.  Therefore venue is proper under 28 U.S.C. § 1441(a).

## II.   JURISDICTION PURSUANT TO CLASS ACTION FAIRNESS ACT

5.      This case is subject to removal pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 ("CAFA").  CAFA grants federal courts jurisdictions over class actions in which: (1) the aggregate number of proposed plaintiffs is 100 or greater; (2) any member of the plaintiff class is a citizen of a different state than the defendant, thus establishing the required minimal diversity; (3) the primary defendants are not States, State officials, or other governmental entities; and (4) the aggregate amount-in-controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2)(A), (d)(5)(A) - (B), and (d)(6).

MOTRICITY, INC.'S NOTICE OF REMOVAL - 2

6.      These jurisdictional requirements are satisfied by the allegations of the Plaintiff's Complaint and certain facts related to the nature and extent of Motricity's business. As a result, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

7.      **This Action is a Class Action Consisting of More Than 100 Members:** In the Complaint, Plaintiff claims to represent a class of "all wireless telephone subscribers nationwide who suffered losses or damages as a result of Motricity facilitating and billing for mobile content products and services not authorized by the subscriber . . .." Complaint, ¶ 25. Plaintiff claims that the putative class consists of "thousands of individuals and other entities, making joinder impractical." Complaint, ¶ 26. Based on these allegations, the aggregate number of class members in the class that Plaintiff purports to represent is greater than 100 and thus satisfies 28 U.S.C. § 1332(d)(5)(B).

8.      **Plaintiff is a Citizen of a Different State Than Motricity:** Plaintiff is a citizen of the State of Florida. Complaint, ¶ 2. Motricity is, and was at the time Plaintiff commenced this action, a Delaware corporation with its principal place of business in the State of Washington. Complaint, ¶ 3. The minimal diversity required by CAFA is met because Plaintiff and Motricity are citizens of different states. *See* 28 U.S.C. § 1332(d)(2)(A).

9.      **Motricity is Not a State, State Official, or Other Governmental Entity:** As stated above, Motricity is a private corporation and thus 28 U.S.C. § 1332(d)(5)(A) is met.

10.     **The $5,000,000 Amount-in-Controversy Requirement has Been Met:** The allegations in the Complaint and the nature and extent of Motricity's business both indicate that well over $5,000,000 is in controversy in this action and, therefore, that CAFA's amount-in-controversy requirement has been met.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 3

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

11.     First, the Complaint seeks injunctive relief under the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.*  Complaint, ¶ 50, Prayer for Relief ¶ G.  The Complaint seeks an injunction to force Motricity to obtain the consent of customers receiving mobile content by processing "a unique 'access code' for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time the account is opened, and require that it be produced any time a third-party attempts to charge the account. If a matching code is not provided, no charges would be included on the customer's billing statement." Complaint, ¶¶ 16, 50.

12.     The potential cost to Motricity of complying with the injunction sought in the Complaint exceeds $5,000,000, even without considering the damages sought by the Plaintiff. As set forth in the Declaration of Paul Bock attached hereto as **Exhibit B** ("Bock Dec."), the minimum cost to Motricity of complying with the injunctive relief sought in the Complaint is $7,985,430.00.  Bock Dec, ¶ 6.  This amount, which is a reasonable estimate based on Mr. Bock's detailed breakdown of work to be performed to comply with the injunctive relief sought, consists of one-time development costs as well as maintenance costs to ensure compliance with the injunctive relief for a period of five (5) years.  *Id.*  Moreover, five (5) years is a very conservative estimate for the period of time over which Motricity would incur maintenance expenses to comply with the injunction, as the injunction would be in effect indefinitely.  Furthermore, as set forth in the Bock Declaration, the estimate of $7,985,430.00 is a very conservative cost estimate and the actual cost to Motricity in complying with the injunctive relief sought would likely substantially exceed this nearly $8 Million figure.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 4

13.      Accordingly, the cost to Motricity of complying with the injunctive relief sought in the Complaint exceeds CAFA's $5,000,000.00 minimum amount in controversy. This is exclusive of the Complaint's allegations that the putative class plaintiffs are entitled to monetary damages in addition to the injunctive relief.   The additional consideration of monetary damages sought by the Plaintiff significantly increases the total amount in controversy – an amount which far exceeds $8 Million, much less the $5 Million jurisdictional requirement.

14.      Because both the nature and extent of Motricity's business and Plaintiff's own Complaint prove by a preponderance of the evidence that the amount-in-controversy exceeds $5,000,000, the amount-in-controversy requirement of 28 U.S.C. § 1332(d) is satisfied.

15.      In summary, all of CAFA's jurisdictional requirements are satisfied by the allegations of the Plaintiff's Complaint and certain facts related to the nature and extent of Motricity's business.  As a result, this Court has subject matter jurisdiction over this action.

## III.      PROCEDURAL STATEMENT

16.      Because Plaintiff filed this action on June 24, 2008 and served Motricity on July 1, 2008, this Notice of Removal has been timely filed within thirty (30) days of service pursuant to 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999).

17.      Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for the Western District of Washington is proper because the Superior Court of Washington for King County is located within this District.

18.      Pursuant to 28 U.S.C. § 1446(a), Motricity will promptly provide notice of this Notice of Removal to the Superior Court of Washington for King County.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 5

19.     This Notice of Removal has been served upon all parties pursuant to 28 U.S.C. § 1446(d).

20.     Pursuant to 28 U.S.C. § 1446 and Local Rule 101(b), and the conjoined verification of Kit W. Roth, attached as **Exhibit C** is a copy of all pleadings and documents filed in the state court action (other than the Summons and Complaint, which are attached as **Exhibit A**).

21.     By removing this action to this Court, Motricity does not waive any defenses, objections or motions available to it under state and federal law. Motricity expressly reserves the right to require that the claims of Plaintiff and all members of the putative class be decided on an individual basis through arbitration.

WHEREFORE, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and Western District Local Rule 101, Motricity hereby removes the above-captioned action from the Superior Court of Washington for King County to the United States District Court for the Western District of Washington.

Respectfully submitted,

DLA PIPER US LLP

Stellman Keehnel, WSBA No. 9309
Kit W. Roth, WSBA No. 33059
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044
Telephone: 206.839.4800
Fax: 206.839.4801
E-mail: stellman.keehnell@dlapiper.com

Attorneys for Defendant Motricity, Inc.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being served via hand delivery, to:

Clifford A. Cantor
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033

Jay Edelson
Myles McGuire
Kamberedelson, LLC
53 West Jackson Blvd., Suite 1530
Chicago, IL 60604

on this the 30th day of July, 2008.

Kit W. Roth, WSBA No. 33059
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044
Telephone: 206.839.4800
Fax: 206.839.4801
E-mail: stellman.keehnell@dlapiper.com

Attorneys for Defendant Motricity, Inc.

MOTRICITY, INC.'S NOTICE OF REMOVAL - 7

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 • Tel: 206.839.4800

1

### VERIFICATION

2      Pursuant to Western District of Washington Local Rule 101(b), the undersigned counsel

3   for Defendant Motricity, Inc. hereby verifies that the pleadings and other documents attached

4   hereto as **Exhibit A** and **Exhibit C** are true and complete copies of the pleadings and

5   documents in the state court proceeding.

6      I declare under penalty of perjury that the foregoing is true and correct.

7

8      EXECUTED at Seattle, Washington this 30th day of July, 2008.

9

10

11                     _____

                        Kit W. Roth, WSBA No. 33059

12                      Attorneys for Defendant Motricity, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25   WEST\21481571.1

26

MOTRICITY, INC.'S NOTICE OF REMOVAL - 8

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

# EXHIBIT A

**FILED**

08 JUN 24 PM 1:15

**PHOTOCOPY.**

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

## SUPERIOR COURT OF WASHINGTON
## KING COUNTY

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiff, | Case No. |
| vs. | COMPLAINT |
| MOTRICITY, INC., a Delaware corporation, | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff, by her attorneys, alleges as and for her class action complaint, upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, as follows:

### NATURE OF THE ACTION

1.     Plaintiff Susan Rynearson brings this class action complaint against Bellevue, Washington-headquartered defendant Motricity, Inc. for its unlawful practice of facilitating the charging of cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Motricity unlawfully collecting a significant sum of money from consumers nationwide, and to obtain redress for all persons injured by Motricity's conduct.

COMPLAINT                                    - 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

9

BEST AVAILABLE IMAGE POSSIBLE

## PARTIES

2. Plaintiff Susan Rynearson is a resident of Florida.

3. Defendant Motricity, Inc. is a leading aggregator in the United States. Motricity is a Delaware corporation headquartered at 601 108th Ave. NE, Suite 900, Bellevue, Washington 98004. Motricity does business throughout the State of Washington and the nation.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to RCW § 2.08.010.

1. Jurisdiction and venue are proper because Motrocity is a corporation headquartered in King County and/or because the improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from Washington.

## CONDUCT COMPLAINED OF

2. This case arises from two closely related phenomena. The first is the capability of most cellular telephones not only to make and receive telephone calls but also to send and receive text messages, including – most significantly for present purposes – "premium" text message services. These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio, and participatory television).

3. The second underlying phenomenon is this: Just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by wireless carriers. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they

COMPLAINT   - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

10

1  do so with the help of third-party companies known as aggregators. These aggregators act as

2  middle-men, representing numerous mobile content providers in arriving at the agreements that

3  allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both

4  the aggregators and the wireless carriers are compensated for their services to the mobile content

5  providers by retaining a substantial percentage of the amount for each premium mobile content

6  transaction.

7      4.  The rapid and largely unplanned growth of the premium mobile content industry

8  has led both to the above-described structure and a disastrous flaw within it. That flaw –

9  understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content

10  providers – is an open secret within the industry, but little understood outside of it. The billing

11  and collection systems established by companies including Motricity in aid of the premium

12  mobile content industry that enriches them are conspicuously free of any checks or safeguards to

13  prevent erroneous and unauthorized charges from being added to customers' bills.

14      5.  As Motricity knows, thousands of dollars have been collected on account of such

15  unauthorized charges for premium mobile content in the industry over the last few years. And

16  while it has always been within the power of companies such as Motricity to institute simple and

17  effective measures that would prevent this, they have instead knowingly maintained the very

18  system that has allowed these erroneous charges. Motricity has reaped and retained its

19  respective share of the improper collections.

20      6.  While the total sales in the nation of premium mobile content since its inception

21  amount to a significant sum, the business is still in its infancy. The burgeoning industry has

22  already expanded from ordinary ringtones into mass media-related products such as interactive

23  radio and participatory voting at television and concert events and, most recently, into services

24

COMPLAINT  - 3 -

11

1   that enable cell phones to function as credit cards. Unchecked, Motricity's practices will injure

2   an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

3         7.      Unlike transactions made using checks and credit cards, which require a signature

4   or a highly private sixteen-digit credit card number, the only information a mobile content

5   provider needs to charge a consumer for its products is the consumer's cellular telephone

6   number. Once a mobile content provider has a consumer's cell phone number, it can cause that

7   consumer to be billed for services and products irrespective of whether the consumer actually

8   agreed to purchase them.

9         8.      Armed with only a cell phone number, the mobile content provider can simply

10   provide that number, along with an amount to be charged, to a billing aggregator (such as

11   Motricity). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the

12   bill associated with that cell phone number. The charge will then appear on the consumer's cell

13   phone bill, often with only minimal, cryptic identifying information.

14         9.      Because the protections normally present in consumer transactions – such as

15   signatures and private credit card numbers – are absent from this process, the likelihood of false

16   charges increases enormously. And because a substantial part of mobile content "sales" are

17   effected through web sites using misleading, oblique, or inadequately explained "consent"

18   procedures, that likelihood increases by another order of magnitude. Mobile content providers

19   have powerful financial incentives to collect as many cell phone numbers as possible but little

20   incentive to ensure that the owners of those numbers have truly agreed to purchase their goods

21   and services.

22        10.      In order to tap into the emerging mobile content marketplace and make content

23   services available to wireless consumers, content providers must first obtain access to wireless

24   carriers' mobile communications networks and frequently do so by "partnering" with

COMPLAINT          - 4 -

12

1  aggregators – *intermediary companies such as Motricity that offer content providers (its "content*

2  *provider partners") direct access to the carriers through existing relationships.* This allows

3  content providers to focus on developing and marketing branded content, applications, and

4  programs while aggregators manage the complex carrier relationships, distribution, billing, and

5  customer service.

6      11.    As an aggregator, Motricity operates a mobile transaction network helping

7  companies develop, deliver, and bill for mobile content services to compatible mobile devices

8  throughout the State of Washington and the nation.

9      12.    By using its end-to-end technology platforms, its relationships with U.S. carriers,

10 and other value-added services, aggregators have forged a crucial link between the wireless

11 carriers and the mobile content providers. They have enabled the transformation of wireless into

12 a marketing, content delivery, and collections process, while carving out a profitable role for

13 themselves as very critical middlemen in this rapidly growing industry.

14     13.    Motricity has developed a vast distribution system that integrates into the wireless

15 networks of some of the largest wireless carriers nationwide, providing direct connections to

16 numerous mobile operators.  As a result, Motricity is able to reach and bill many millions of

17 wireless subscribers nationwide.

18     14.    While aggregators charge their content provider customers some upfront fees,

19 their revenue is primarily generated through a "revenue share" on transactions for which they bill

20 cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile

21 content services offered by a content provider, the aggregator and/or the content provider cause

22 said charge to be billed directly on the cellular telephone bill of the carrier's customer who

23 currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

24

COMPLAINT                                  - 5 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave  SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

13

1  15. The carrier then bills and collects the charge from its current subscriber, retains

2 about a portion of the proceeds as its "revenue share," and then remits the balance to the

3 aggregator who has direct access to its network, e.g., Motricity, which retains a percentage of the

4 balance in the form of its own "revenue share," and then remits the remainder directly to the

5 mobile content provider (or, in some instances, to another aggregator who then retains a

6 percentage of the balance in the form of its own "revenue share" and then remits the balance to

7 its mobile content provider client).

8  16. Indeed, if Motricity wanted to end this wrongful billing, it could do so in an

9 instant. All it would have to do to ensure that it is obtaining the consent of the charged party is

10 agree to process a unique "access code" for each customer account, provided by the carrier to the

11 account holder and his/her authorized representatives at the time the account is opened, and

12 *require that it be produced any time a third-party attempts to charge the account.* If a matching

13 access code is not provided, no charges would be included on the customer's billing statement.

14  17. But instead of implementing such a simple safeguard, Motricity has intentionally

15 created and maintained a system that encourages wrongdoing at every step. Such system results

16 in the wrongful charging of small amounts of money to large numbers of people.

17       **FACTS RELATING TO PLAINTIFF RYNEARSON**

18  18. In or about 2005, plaintiff Rynearson purchased new cell phone service for her

19 personal use from an established wireless carrier.

20  19. On that same day, in exchange for a cellular telephone service plan, Rynearson

21 agreed to pay her carrier a set monthly fee for a period of approximately 12 months.

22  20. In or about 2007, Rynearson's cell phone account was charged or caused to be

23 charged by Motricity for unwanted mobile content services on behalf of third-parties.

24

COMPLAINT      - 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

21.   At no time did Rynearson authorize the purchase of or billing for these products and services by Motricity or anyone else and at no time did Rynearson consent to sending of so-called premium text messages to her cellular telephone.

22.   During the relevant time period, Motricity caused Rynearson to be charged service fees for so-called premium text messages.

23.   At no time did Rynearson authorize Motricity or anyone else to bill her for these charges and at no time did Motricity verify Rynearson's purported authorization of these charges.

24.   Motricity has yet to provide a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest, implement adequate procedures to ensure that such unauthorized charges would not appear in future billing periods, and/or an assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

25.   Rynearson brings this action pursuant to CR 23 on behalf of herself and a class consisting of all wireless telephone subscribers nationwide who suffered losses or damages as a result of Motricity facilitating and billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the defendant, and (ii) any employee of a defendant.

26.   The Class consists of thousands of individuals and other entities, making joinder impractical.

27.   The claims of plaintiff Rynearson are typical of the claims of all of the other members of the Class.

COMPLAINT                                    - 7 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave  SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax  (425) 868-7870

28.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so.  Neither Plaintiff nor their counsel has any interest adverse to those of the other members of the Class.

29.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

30.     Motricity has acted and failed to act on grounds generally applicable to plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

31.     The factual and legal bases of Motricity's liability to plaintiff and to the other members of the Class are the same, resulting in injury to the plaintiff and all of the other members of the Class.  Plaintiff and the other members of the Class have all suffered harm and damages as a result of Motricity's wrongful conduct.

32.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include but are not limited to the following:

(a)     whether Motricity's conduct described herein resulted in unjust enrichment; and

COMPLAINT                                           - 8 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

16

1            (b)    whether Motricity's conduct constitutes unfair and deceptive acts or

2            practices.

3        33.    The questions of law and fact common to the members of the class predominate

4    over any questions affecting only individual members and a class action is superior to all other

5    available methods for the fair and efficient adjudication of this controversy.

6    FIRST CAUSE OF ACTION

7    Restitution / Unjust Enrichment

8    on Behalf of Plaintiff and the Class

9        34.    *Plaintiff incorporates by reference the foregoing allegations.*

10       35.    *A benefit has been conferred upon Motricity by plaintiff and the Class. Motricity*

11   *has received and retains money belonging to plaintiff and the Class resulting from its facilitation*

12   *of billing and collecting significant amounts of money in unauthorized mobile content charges.*

13       36.    *Motricity appreciates or has knowledge of said benefit.*

14       37.    *Motricity unjustly gained money from plaintiff and the Class as a direct result of*

15   *Motricity's conduct.*

16       38.    *Under principles of equity and good conscience, Motricity should not be*

17   *permitted to retain the money belonging to plaintiff and the Class which Motricity has unjustly*

18   *received as a result of its actions.*

19   SECOND CAUSE OF ACTION

20   Tortious Interference with a Contract

21   on Behalf of Plaintiff and the Class

22       39.    Plaintiff incorporates by reference the foregoing allegations.

23       40.    Plaintiff and the Class had contractual relationships with their wireless carriers

24   whereby they agreed to pay a certain sum of money in exchange for activation of their cellular

COMPLAINT            - 9 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

17

1  telephone accounts and their carriers' promise to provide various communication and related

2  services to plaintiff and the Class and to bill plaintiff and the Class only for products or services

3  the purchase of which they had authorized.

4       41.    Motricity knew of said contractual relationships and intended to and did induce a

5  breach or disruption of the contractual relationships.

6       42.    Motricity intentionally interfered with said contractual relationship through

7  improper motives and/or means by knowingly and/or recklessly continually causing to be placed

8  on the cellular telephone bills of cellular telephone owners across the nation unauthorized

9  charges.

10      43.    Plaintiff and the Class suffered loss as a direct result of the conduct of Motricity.

11                  **THIRD CAUSE OF ACTION**

12      **Violation of the Washington Consumer Protection Act, RCW § 19.86.010 *et seq.***

13             **on Behalf of Plaintiff and the Class**

14      44.    Plaintiff incorporates by reference the foregoing allegations.

15      45.    The Washington Consumer Protection Act ("CPA") declares unlawful (a) an

16  unfair or deceptive act or practice, (b) occurring in trade or commerce, (c) with a public interest

17  impact, (d) that causes injury to plaintiff.

18      46.    At all relevant times, Motricity has engaged in unfair and deceptive acts and

19  practices in the conduct of its business by misleadingly and deceptively facilitating the charging

20  of wireless telephone subscribers for unauthorized mobile content charges.

21      47.    Motricity's unfair and deceptive business acts and practices impact the public

22  interest. Motricity committed the unfair and deceptive acts described herein in the course of its

23  business as part of a pattern and generalized course of conduct. Motricity's unfair and deceptive

24  business acts and practices have affected, and continue to affect, a great many consumers.

COMPLAINT               - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel. (425) 868-7813 • Fax: (425) 868-7870

18

48.     As a result of Motricity's unfair and deceptive acts and practices in the conduct of its business, plaintiff and the other members of the Class have suffered actual financial damages to their business and/or property.

49.     The State of Washington has an important interest in regulating the business activities of companies headquartered in Washington state. The policies complained of herein, that are the basis of the statutory claim in this cause of action, were developed in, set in, and/or emanated from Washington state.

50.     Unless Motricity is enjoined from its unfair and deceptive acts and practices as alleged herein, Motricity will continue to cause damage to consumers.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Susan Rynearson, on behalf of herself and the Class, prays for the following relief:

A.      Certify this case as a class action on behalf of the Class defined above; appoint Rynearson as class representatives; and appoint her counsel as class counsel;

B.      Declare that the actions of Motricity, as set out above, result in unjust enrichment, constitute tortious interference with a contract, and violate the CPA;

C.      Enter judgment against Motricity for all damages caused by its conduct and, to the extent authorized under the CPA, treble damages;

D.      Award restitution against Motricity for all money that Motricity has to which plaintiff and the Class are entitled in equity;

E.      Award plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Award plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

COMPLAINT                                    - 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ◆ Fax: (425) 868-7870

19

1     G.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of

2   plaintiff and the Class; and

3     H.     Award such other and further relief as equity and justice may require.

4                                    **JURY DEMAND**

5   Plaintiff requests a trial by jury of all issues so triable.

6
    Dated: June 24, 2008                    Respectfully submitted,
7
                                            LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
8
                                            By:   s/  Clifford A. Cantor (WSBA # 17893)
9                                           627 208th Ave. SE
                                            Sammamish, WA 98074-7033
10                                          Tel:   (425) 868-7813
                                            Fax:   (425) 868-7870
11
                                            Jay Edelson
12                                          Myles McGuire
                                            KAMBEREDELSON, LLC
13                                          53 West Jackson Blvd., Suite 1530
                                            Chicago, Illinois 60604
14                                          Tel:   (312) 589-6370
                                            Fax:   (312) 589-6378
15
                                            *Attorneys for Plaintiff*
16

17

18

19

20

21

22

23

24

COMPLAINT                          - 12 -

20

Case Number:        08-2-21227-1
Case Title:         Susan Rynearson vs Motricity, Inc.
Document Title:     SUMMONS & COMPLAINT
User's Name:        Clifford Cantor
Filed Date:         6/24/2008 1:15:18 PM

User Signed

Signed By:     Clifford Cantor
WSBA #:        17893
Date:          6/24/2008 1:12:20 PM

21

BEST AVAILABLE IMAGE POSSIBLE

SUPERIOR COURT OF WASHINGTON
KING COUNTY

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiff, | Case No. |
| vs. | |
| MOTRICITY, INC., a Delaware corporation, | SUMMONS – 20-day |
| Defendant. | |

**TO THE DEFENDANT:**

A lawsuit has been started against you in the above-entitled court by Susan Rynearson, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what it asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

SUMMONS – 20-day                                    - 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    You may demand that the plaintiff file this lawsuit with the court. If you do so, the

2  demand must be in writing and must be served upon the person signing this summons. Within

3  14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the

4  service on you of this summons and complaint will be void.

5    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6  that your written response, if any, may be served on time.

7    This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8  of Washington.

9    Dated: June 24, 2008    Respectfully submitted,

10    LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

11    By:   s/  Clifford A. Cantor (WSBA # 17893)
       627 208th Ave. SE
12    Sammamish, WA  98074-7033
       Tel:   (425) 868-7813
13    Fax:   (425) 868-7870

14    Jay Edelson
       Myles McGuire
15    KAMBEREDELSON, LLC
       53 West Jackson Blvd., Suite 1530
16    Chicago, Illinois 60604
       Tel:   (312) 589-6370
17    Fax:   (312) 589-6378

18    *Attorneys for Plaintiff*

19

20

21

22

23

24

SUMMONS – 20-day    - 2 -

23

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN RYNEARSON, *individually and*
*on behalf of all others similarly situated,*          )
                                                        )
                                                        )
          **Plaintiff,**                                )
                                                        )
v.                                                      )          Case No. _____
                                                        )
MOTRICITY, INC., a Delaware                             )
corporation,                                            )
                                                        )
          **Defendant.**                                )

---

## DECLARATION OF PAUL BOCK

---

I, Paul Bock, having been duly sworn, according to law, do hereby depose and state as follows:

1.     I am an adult resident of Cary, North Carolina, and make this declaration from my personal knowledge and for use in this case.

2.     I am the Director of Engineering for Motricity, Inc. ("Motricity") and have served in this capacity for a year and a half. I have extensive knowledge of the development and monthly efforts to sustain various aspects of the mobile content that Motricity provides to its end users.

3.     I have reviewed Paragraph 16 of the Complaint. In order to comply with the relief requested therein, Motricity would be forced to effectuate a system whereby a unique "access code" for each customer account would be provided.

4.     Below is an itemized breakdown of the development costs (one time), hardware and licensing costs (one time), and monthly maintenance costs (over five years) of such a

DECLARATION OF PAUL BOCK
1915229 v1
104467-060 07/30/08

- 1 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

24

1   system. The costs listed are the lowest reasonable estimated costs for this project, but the actual

2   costs would likely be greater than those set forth below.

3       5.     The itemized list explains and describes: (1) the work required to create, develop,

4   and maintain such an access code; (2) the hours required to accomplish each part of such a

5   project; (3) the cost of each individual aspect of the project, based on the reasonable contract rate

6   for each of the services listed; and (4) the lowest estimated total cost.

7

8       6.     As is evident below, the most conservative estimate of the total cost of any system

9   that would give each Motricity user a unique "access code" for his/her account in an attempt to

10  prevent unauthorized billing is $7,985,430.00.

| Motricity System Changes | Costs |
|---|---|

### One-Time Development Costs

#### Part One

**Architect – Contractor:**

\* Create requirements and general architecture

    400 hours (50 person days) at $125/hour        $50,000.00

**Developers – Contractor:**

\* Application programming interface ("API") for content provider to request an accessCode. This will trigger an end user registration where Motricity manages opting in the end user. The user is opted in via an SMS message to the phone. User is given the accessCode for this purchase and upon responding "Yes" to accept the charges via mobile origination ("MO"), content provider is granted the accessCode.
    - Send SMS opt in and track responses
    - Maintain session as end user could be in multiple "opt-ins"
    - Create system to post notification of access code to content provider
    - Support HyperText Transfer Protocol ("HTTP") API calls
    - Support Short Message Peer-to-peer Protocal ("SMPP") calls
    - Support Wireless Application Protocol ("WAP") session (accessCode to be entered into WAP site via end user). End user browser is re-directed to Motricity to ensure opt in.

DECLARATION OF PAUL BOCK
1915229 v1
104467-060 07/30/08

- 2 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 * Tel: 206.839.4800

25

- Support HTTP session (accessCode to be entered into web site via end user). End user browser is re-directed to Motricity to ensure opt in.

\* Internal API to retrieve accessCode given a carrier and a phone number for validation in Motricity system.

\* Test tools

2,200 hours (275 person days) at $125/hour contract rate

$275,000.00

**QA – Contractor::**

\* The majority of the work will require either new code or changes to core modules

1,120 hours (140 person days) at $95/hour            $106,400.00

**DBA – Contractor:**

\* Schema/system to archive accessCodes

\* Schema/system to archive WAP/WEB sessions

\* Modifying and adding data base ("DB") schemas to support accessCode

720 hours (65 person days) at $125/hour            $65,000.00

**Product Manager:**

\* Documentation of WEB/WAP/SMS/HTTP interfaces

160 hours (20 person days) at $125/hour -            $20,000.00

**Project Manager – Contractor:**

\* Manage entire project.

2,200 hours (275 person days) at $125/hour            $275,000.00

<strong>Development Part One Total:</strong>            $791,400.00

<strong><u>Part Two</u></strong>

**Architect - Contractor:**

\* Create requirements and general architecture

240 hours (30 person days) at $125/hour            $30,000.00

**Developers – Contractor:**            $395,000.00

DECLARATION OF PAUL BOCK

1915229 v1
(04467-060 07/30/08

- 3 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 \* Tel: 206.839.4800

1  * Add accessCode parameter to all interfaces and APIs for all
2  supported versions (SMPP and HTTP)

3  * Update business service tier ("BST") (to use new parameter(s))

   *BST modified to track accessCode violations and lock out content
4  providers

5  *Internal systems to support new access parameter

   - Subscriptions Management

6  - Deliver Engine

7  - Campaign Manager

8  - Media Server

   - Subscriber Management

9  - Billing Systems Billing Action Processor/Billing Action Service
10 ("BAP/BAS")

   - Each Billing Interface
11
   *Notifications updated to alert Content Provider for invalid
12 accessCodes

13     Total Developers Cost: 3,160 hours(395 person days) x
       $125/hour contract rate
14

15 **QA – Contractor**

   *Code changes to core modules, including full QA regression. (395
16 person days)

17
       Total QA Cost: 3,160 hours (395 person days) x $95/hour          $300,200.00
18     contract rate

19

20
   **Project Manager – Contractor**
21
   *Project management services over all modules (395 person days)
22     Total Project Manager Cost: 3,160 hours (395 person days) x
       $125/hour contract rate                                         $395,000.00
23

24 **Gateway Operations**

25 *Migration of content providers to new API (30 person days)
                                                                        $28,560.00
26     Total Gateway Operations Cost: 240 hours (30 person days) x

27

$119/hour contract rate

**Product Manager -- Contractor**

*Documentation updated for SMPP, HTTP APIs

*Documentation created to aid in content provider migration

Total Product Manager Cost: 90 hours (15 person days) x
$125/hour contract rate                                             $11,250.00

**DBA – Contractor**

*All reports updated to track "Invalid Access Code Billings"

*Securing accessCode master DB with encryption/secure hardware,
etc.

*Modifying and adding DB schemas to support accessCode

Total DBA Cost: 720 hours (90 person days) x $125/hour
contract rate                                                       $90,000.00

**Development Part Two Total:**     **$1,250,010.00**

## 5 Year Sustainment Costs

**Developers – Contractor**

480 hours (60 person days) at $125/hour = $60,000 per month
for 5 years                                                          $3,600,000.00

**Ops – Contractor**

160 hours (20 person days) at $119/hour = $19,067 per month
for 5 years                                                          $1,144,020.00

**DBA – Contractor**

160 hours (20 person days) at $125/hour = $20,000 per month
for 5 years                                                          $1,200,000.00

**Sustainment Total:**     **$5,944,020.00**

DECLARATION OF PAUL BOCK                              DLA Piper US LLP
19|5229 v1                          - 5 -             701 Fifth Avenue, Suite 7000
104467-060 07/30/08                                  Seattle, WA 98104-7044 * Tel: 206.839.4800

1
2      **Total Project Cost:**          **$7,985,430**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECLARATION OF PAUL BOCK
1915229 v1
104467-060  07/30/08

- 6 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

29

1      I declare under penalty of perjury that the foregoing is true and correct. Executed on July

2    30, 2008.

3

4

5    PAUL BOCK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    1915229 v1
       104467-060 07/29/08

DECLARATION OF PAUL BOCK

- 7 -

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 * Tel: 206.839.4800

30

# EXHIBIT C

**FILED**

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

PHOTOCOPY

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| Susan Rynearson | NO. 08-2-21227-1 SEA |
| VS | |
| Motricity, Inc. | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

## CAUSE OF ACTION

**(MSC) -**   TORT, NON-MOTOR VEHICLE

## AREA DESIGNATION

**SEATTLE -**   Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

31

FILED

08 JUN 24 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-21227-1 SEA

PHOTOCOPY

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | | |
|---|---|---|
| Susan Rynearson | | NO.  08-2-21227-1     SEA |
| | | Order Setting Civil Case Schedule (*ORSCS) |
| | Plaintiff(s) | |
| vs | | |
| Motricity, Inc. | | ASSIGNED JUDGE  Washington        42 |
| | | FILE DATE:                 06/24/2008 |
| | Defendant(s) | TRIAL DATE:              12/14/2009 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this *Order Setting Case Schedule (Schedule)* on the Defendant(s) along with the *Summons and Complaint/Petition.* Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____        _____
          Print Name                                            Sign Name

Order Setting Civil Case Schedule (*ORSCS)                                    REV. 8/07        1

I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [See KCLR 26], and for meeting the discovery cutoff date [*See KCLR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of $200 must be paid when any answer that includes additional claims is filed in an existing case.

**SHOW CAUSE HEARINGS FOR CIVIL CASES [King County Local Rule 4(g)]**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. A review of the case will be undertaken to confirm service of the original complaint. A *Show Cause Hearing* will be set before the Chief Civil or RJC judge if needed. *The Order to Show Cause* will be mailed to the plaintiff(s) or counsel to attend.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date,** the Superior Court Clerk is authorized by KCLR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule if the case is subject to mandatory arbitration and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. Any party filing a Statement must pay a $220 arbitration fee. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Rule 41.

King County Local Rules are available for viewing at www.metrokc.gov/kcscc.

Order Setting Civil Case Schedule (*ORSCS)                      REV 8/07    2

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Tue  06/24/2008 | * |
| Confirmation of Service [See KCLR 4.1]. | Tue  07/22/2008 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. $220 arbitration fee must be paid | Tue  12/02/2008 | * |
| DEADLINE to file Confirmation of Joinder if not subject to Arbitration. [See KCLR 4.2(a) and Notices on Page 2]. Show Cause hearing will be set if Confirmation is not filed or Box 2 is checked. | Tue  12/02/2008 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area [See KCLR 82(e)] | Tue  12/16/2008 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [See KCLR 26(b)]. | Mon 07/13/2009 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [See KCLR 26(b)]. | Mon 08/24/2009 | |
| DEADLINE for Jury Demand [See KCLR 38(b)(2)]. | Tue  09/08/2009 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [See KCLR 40(e)(2)]. | Tue  09/08/2009 | * |
| DEADLINE for Discovery Cutoff [See KCLR 37(g)]. | Mon 10/26/2009 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [See KCLR 16(c)]. | Mon 11/16/2009 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLR 16(a)(4)]. | Mon 11/23/2009 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [See KCLR 16(a)(2)] | Mon 11/23/2009 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [See KCLR 56; CR 56]. | Mon 11/30/2009 | |
| Joint Statement of Evidence [See KCLR 16(a)(5)]. | Mon 12/07/2009 | * |
| Trial Date [See KCLR 40]. | Mon 12/14/2009 | |

## III. ORDER

Pursuant to King County Local Rule 4 [KCLR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:   06/24/2008

PRESIDING JUDGE

Order Setting Civil Case Schedule (*ORSCS)

REV. 8/07      3

### IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE
*READ THIS ORDER PRIOR TO CONTACTING YOUR ASSIGNED JUDGE*

This case is assigned to the Superior Court Judge whose name appears in the caption of this *Schedule*. The assigned Superior Court Judge will preside over and manage this case for all pre-trial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

The following procedures hereafter apply to the processing of this case:

**APPLICABLE RULES:**

a. Except as specifically modified below, all the provisions of King County Local Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.

**CASE SCHEDULE AND REQUIREMENTS:**

**A. Show Cause Hearing:** A Show Cause Hearing will be held before the Chief Civil/Chief RJC judge if the case does not have confirmation of service on all parties, answers to all claims, crossclaims, or counterclaims as well as the confirmation of joinder or statement of arbitrability filed before the deadline in the attached case schedule. All parties will receive an *Order to Show Cause* that will set a specific date and time for the hearing. Parties and/or counsel who are required to attend will be named in the order.

**B. Pretrial Order:** An order directing completion of a Joint Confirmation of Trial Readiness Report will be mailed to all parties approximately six (6) weeks before trial. This order will contain deadline dates for the pretrial events listed in King County Local Rule 16: -

1) Settlement/Mediation/ADR Requirement;
2) Exchange of Exhibit Lists;
3) Date for Exhibits to be available for review;
4) Deadline for disclosure of witnesses;
5) Deadline for filing Joint Statement of Evidence;
6) Trial submissions, such as briefs, Joint Statement of Evidence, jury instructions;
7) voir dire questions, etc;
8) Use of depositions at trial;
9) Deadlines for nondispositive motions;
10) Deadline to submit exhibits and procedures to be followed with respect to exhibits;
11) Witnesses – identity, number, testimony;

**C. Joint Confirmation regarding Trial Readiness Report:** No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment), etc. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff/petitioner's counsel is responsible for contacting the other parties regarding said report.

**D. Settlement/Mediation/ADR:**

1) Forty five (45) days before the Trial Date, counsel for plaintiff shall submit a written settlement demand. Ten (10) days after receiving plaintiff's written demand, counsel for defendant shall respond (with a counteroffer, if appropriate)

2) Twenty eight (28) days before the Trial Date, a settlement/mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**E. Trial:** Trial is scheduled for 9:00 a.m. on the date on the *Schedule or as soon thereafter as convened by the court.* The Friday before trial, the parties should access the King County Superior Court website at www.metrokc.gov/kcsc to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

MOTIONS PROCEDURES:

A. **Noting of Motions**

Dispositive Motions: All Summary Judgment or other motions that dispose of the case in whole or in part will be heard with oral argument before the assigned judge. The moving party must arrange with the courts a date and time for the hearing, consistent with the court rules.

King County Local Rule 7 and King County Local Rule 56 govern procedures for all summary judgment or other motions that dispose of the case in whole or in part. The local rules can be found at www.metrokc.gov/kcscc.

Nondispositive Motions: These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." King County Local Rule 7 governs these motions, which include discovery motions. The local rules can be found at www.metrokc.gov/kcscc.

Motions in Family Law Cases not involving children: Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions Calendar. King County Local Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.metrokc.gov/kcscc.

Emergency Motions: Emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call, and without written motion, if the judge approves.

Filing of Documents All original documents must be filed with the Clerk's Office. The working copies of all documents in support of motions must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copy must be delivered to his/her courtroom or to the judges' mailroom. Do not file working copies with the Motions Coordinator, except those motions to be heard on the Family Law Motions Calendar, in which case the working copies should be filed with the Family Law Motions Coordinator.

Original Proposed Order: Each of the parties must include in the working copy materials submitted on any motion an original proposed order sustaining his/her side of the argument. Should any party desire a copy of the order as signed and filed by the judge, a preaddressed, stamped envelope shall accompany the proposed order.

Presentation of Orders: All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final orders and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

C. **Form:** Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PETITIONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.

_____
PRESIDING JUDGE

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN RYNEARSON, individually and on behalf of a class of similarly situated individuals,<br><br>      Plaintiff,<br><br>   v.<br><br>MOTRICITY, INC., a Delaware corporation,<br><br>      Defendant. | **DECLARATION OF STEPHEN LEONARD** |

I, Stephen Leonard, hereby declare as follows:

1.    I make this declaration from my personal knowledge and for use in this case.

2.    I am the General Manager, Off Deck, for Motricity, Inc. ("Motricity") and have served in this capacity for over two and one-half years. I have extensive knowledge of revenues generated by Motricity as a result of the delivery of premium mobile content to mobile subscribers.

DECLARATION OF STEPHEN LEONARD - 1

1    3.    I do not intend anything stated herein to indicate, admit, or acknowledge any

2    fault or wrongdoing of any kind by Motricity.

3    4.    Based on documents and data maintained in the ordinary course of business,

4    Motricity has generated in excess of $50 million in revenue as a result of the delivery of

5    premium mobile content to mobile subscribers nationwide.

6

7    I declare under penalty of perjury that the foregoing is true and correct.  Executed on

8    March 25, 2009.

9

10                                        STEPHEN LEONARD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF STEPHEN LEONARD - 2

Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203 * Tel: 615.252.2311

**EXHIBIT C**

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 122 of 153

Case 2:08-cv-0115..-MJP    Document 35-2    Filed 03/0.. 2009    Page 2 of 18
Case 1:08-cv-22131-DLG    Document 56-3    Entered on FLSD Docket 02/13/2009    Page 2 of 18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 08-CV-22131-USDJ Graham/USMJ Torres

| | |
|---|---|
| DENEE VANDYKE and BEN WALKER, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| MEDIA BREAKAWAY LLC, a Nevada limited liability company, | ) ) ) |
| Defendant. | ) ) |

### DECLARATION OF JAY EDELSON

Pursuant to 28 U.S.C. § 1764, I, Jay Edelson, hereby declare and state as follows:

1. I am an attorney admitted to practice in the State of Illinois, as well as the United States District Courts for the Northern District of Illinois and the Western District of Michigan, and have appeared in this case *pro hac vice*. I represent the Plaintiffs in the above–titled action. I am entering this declaration in support of the attached Motion and Memorandum for Preliminary Approval of Class Action Settlement. I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2. I am one of the managing partners in the law firm of KamberEdelson, LLC.

3. Beginning in 2005, my law firm and its predecessor have been involved in a wide-ranging investigation into the mobile content industry, along with a team of other attorneys prosecuting similar actions.

4. To date, that investigation has resulted in information gathered from over 1,000 aggrieved consumers. As a result, consumers have filed lawsuits across the country against all the major wireless carriers (e.g. AT&T, Sprint, and T-Mobile), aggregators (e.g. mBlox, Motricity, and Mobile Messenger) and mobile content providers (e.g. Media

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 123 of 153

Case 2:08-cv-0113u-MJP   Document 35-2   Filed 03/C ...2009   Page 3 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 3 of 18

Breakaway) broadly challenging widespread cramming throughout the mobile content industry.

5. Class Counsel's investigation has also lead to an exchange of information and litigation strategy with multiple governmental agencies, including the Florida Attorney General's Office and the California Public Utilities Commission.

6. I have received and reviewed numerous documents produced from numerous state agencies, including the Illinois, Maryland, and Florida Attorney Generals' Offices.

7. I have also participated in in-person meetings with both the Florida Attorney General's Office and the California Public Utilities Commission to discuss their respective investigations into the mobile content industry. With respect to the Florida Attorney General's Office, Class Counsel had numerous discussions regarding Media Breakaway's billing practices.

8. On December 2, 2009, Class Counsel met in person with Media Breakaway's Counsel in Miami, Florida. The Parties were unable to reach a settlement on that date, but agreed to revisit the issues at a later time.

9. Thereafter, the parties continuously engaged in settlement discussions, which, on January 12, 2009, culminated in the execution of a memorandum of understanding ("MOU"). As set forth in the MOU, the parties reached an agreement in principal as to all relief due to the class. The only remaining issues that required resolution were the amount of attorneys' fees to be paid to Class Counsel and incentive awards to be paid to the Class Representatives. Under the MOU, the Parties agreed to refer such disputes to binding mediation presided over by Mediator Rodney A. Max of Upchurch Watson White & Max Mediation Group.

10. On February 5, 2009, the parties engaged in a mediation to resolve the issues of attorneys' fees and incentive awards. Mediator Rodney A. Max presided over the mediation. Although the Parties were unable to reach agreement on the amount of attorneys' fees to be paid to Class Counsel or incentive awards to be paid to the Class

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 124 of 153

Case 2:08-cv-0113u-MJP   Document 35-2   Filed 03/0...2009   Page 4 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 4 of 18

Representatives, they were able to reach agreement on other matters, as well as a framework to resolve any outstanding issues. The Parties also agreed that Class Counsel's fee award will not exceed $2.3 million.

11. Based upon information that Class Counsel has collected in this and the Related Action, and from experts, governmental agencies, and in litigation involving the aggregators and wireless carriers, Class Counsel estimates that approximately 20% of all mobile content charges are unauthorized. Based on Class Counsel's investigation in this case and through discovery, this percentage was adjusted to reflect an estimation of Media Breakaway's unauthorized charges as compared to the industry more generally. In determining the cap amount, Class Counsel took into account other factors such as previous refunds given, the results of an investigation from the Office of the Florida Attorney General, and the complaints received from consumers.

12. Based upon the foregoing, Class Counsel believes the $5.75 million settlement cap approximates the full amount of unauthorized charges attributable to Media Breakaway. Because the unauthorized charges typically range from $10-$20, the class now has the opportunity to recover the majority of unauthorized charges.

13. As part of the prospective relief secured on behalf of the class, Media Breakaway has agreed to continue and enhance its refund policy and to allow all wireless subscribers who contact customer service to unsubscribe from any unwanted mobile content subscription. In addition, Media Breakaway has agreed to adhere to U.S. federal laws and rules and applicable state regulatory rules concerning the advertising and sale of Mobile Content subscription services and prevailing mobile best practices such as the Consumer Best Practices Guidelines promulgated by the Mobile Marketing Association.

14. The Parties reached the instant settlement after hard-fought litigation, and based upon the information produced by Media Breakaway in discovery, and otherwise, Plaintiffs' counsel is confident in the strength of the claims alleged in the Class Action Complaint and that Plaintiffs would ultimately prevail at trial. Notwithstanding the foregoing, when

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 125 of 153

Case 2:08-cv-0113o-MJP   Document 35-2   Filed 03/0-..2009   Page 5 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 5 of 18

the strengths of the Plaintiffs' claims are weighed against the uncertainty inherent in litigation, the legal and factual obstacles present, and the complexity of class action practice, I believe this settlement to be fair and in the best interest of the class.

15. The present suit has been pending since June 10, 2008, and as a result of the coordinated proceedings involving MB, the wireless service providers, aggregators, and other content providers, Class Counsel had ample foundation upon which to evaluate the proposed settlement. The numerous pending class actions involving alleged unauthorized charges for mobile content have allowed the parties to conduct extensive investigations into the relevant facts and law and to test certain issues through motion practice. Each party, therefore, had the necessary information to evaluate the strengths and weaknesses of their cases in order to mediate effectively. The parties were able to reach the present settlement only after motion practice, discovery, in-person settlement discussions, mediation, and negotiations over settlement terms and language.

16. A true and accurate copy of the firm resume of KamberEdelson LLC is attached to Plaintiff's Motion for Preliminary Approval of the Class Action Settlement as Exhibit B(1).

17. If called on to testify, I could and would do so competently.

18. Further affiant sayeth not.

Jay Edelson

Dated this 13th day of February 2009.

# Exhibit B-1

# KAMBEREDELSON, LLC FIRM RESUME

KAMBEREDELSON, LLC is a commercial litigation and legal consulting firm with attorneys in Chicago, New York, Los Angeles, and Florida. The firm has four primary practice groups: plaintiffs' class action litigation (with a particular emphasis on technology cases), class action litigation defense, general commercial litigation, and legal consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the 2007 contaminated pet food recall, the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, and the Sony CD technology multi-district litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

KAMBEREDELSON is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions. We have several sub-specialties within our plaintiffs' class and mass action practice group:

*Technology Consumer Protection Class Actions:* We have settled the only class actions to date alleging text message spam under the Telephone Consumer Protection Act, including a $7,000,000 settlement with Timberland Co. We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, and an injunctive settlement against Facebook, Inc. Our attorneys also settled an international class action against Register.com, which alleged that the company engaged in deceptive practices in placing advertising on "coming soon" pages of newly registered domain names.

### Representative Settlements:

- *Shen v. Distributive Networks LLC.* No. 06 C 4403 (N.D. Ill.): Co-lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers nationwide. The settlement – the first of its kind in the country – provided each class member with up to $150 in cash.

- *Weinstein, et al. v. Airit2me, Inc.,* Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 128 of 153

Case 2:08-cv-0113...-MJP   Document 35-2   Filed 03/0...2009   Page 8 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 8 of 18

Case settled for $7,000,000.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel in class action settlement involving 16 related cases against largest wireless service provider in the nation. Settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Duffy v. Nevis Mobile, LLC*, No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in non-class action settlement concerning the transmission of allegedly unauthorized mobile content.

- *Zurakov v. Register.com*, No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

- *Kiesel v. Time Warner*, No. 809542 (Orange County Sup. Ct., CA): Co-lead counsel in a representative action on behalf of thousands of apartment and condominium residents in which firewalls were breached during cable installation. Settlement provided the class with complete relief including the inspection of every multi-unit dwelling in the affected county and repair of all breached units wherever they were found.

- *Weaver v. WebTV*, No. 793551 (Santa Clara Sup. Ct., CA): Co-lead counsel in a certified nationwide consumer class action alleging consumer fraud/deceptive advertising of computer services and capabilities. The settlement provided the class with a collective award guaranteeing a minimum face value of $6,000,000.

**Products Liability Class Actions**:  We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases, a $32,000,000

settlement involving the largest pet food recall in the history of the United States and Canada, and a $100,000,000 settlement involving Starlink Corn Products.

**Representative Settlements:**

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Foods Product Liability Litigation*, No. 07-2867 (D. N.J.): Co-lead counsel in class action involving largest pet food recall in United States history. Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

- *In re Starlink Corn Products Liability Litigation* (N.D. Ill.): Represented sub-class of farmers who grew recalled Starlink corn in a consolidated settlement of federal class action valued in excess of $100,000,000.

- *Kan v. Toshiba America Information Systems, Inc.*, No. BC327273 (Los Angeles Sup. Ct.): Class counsel in a defective product/breach of warranty action concerning laptop computers. Settlement provided the class with a collective award valued at approximately $45,000,000.

***General Consumer Protection Class Actions:*** We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

- *Lofton v. Bank of America* (N.D. Cal): Lead counsel in class action alleging deceptive imposition of "fuel-related fees" in connection with airline ticket purchases. Settled for over $2,000,000 in cash, in addition to other relief.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

- *Chancer v. Princess Cruises*, No. BC 115472 (Los Angeles Sup. Ct.): Co-lead counsel in class action lawsuit challenging a cruise line's deceptive "low price guarantee" as a consumer fraud class action. The settlement provided the class with a collective award valued at several millions of dollars.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

- *Cioe v. Lycos*, No. 02 CH 21456 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

- *Gavrilovic v. Vintacom Media Group, Inc.*, No. 04 CH 11342 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

- *McArthur v. Spring Street Networks*, 100766/2004 (New York County, NY): Co-lead counsel in a nationwide class action suit settled under New York consumer protection statutes.

- *California Reconveyance Cases*: Part of a team of attorneys who settled a series of state court class action cases under California's Reconveyance Statute. Cases settled for a collective amount of over $10,000,0000.

**Insurance Class Actions:** We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 131 of 153

Case 2:08-cv-0113c-MJP   Document 35-2   Filed 03/0-..._009   Page 11 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 11 of 18

insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

*Securities Class Actions:* We have successfully prosecuted securities class actions against companies such as Command Systems and Loch Harris on behalf of shareholders.

**Representative Settlements:**

- *Stassi et al. v. Loch Harris et al.*, No. GN 200180 (TX): Lead counsel in derivative action on behalf of technology development company that successfully obtained dissolution of corporation and distribution of assets to shareholders.

- *In re Command Systems*, Case No. 98-cv-3279 (S.D.N.Y.): Lead counsel in securities class action against technology company in which participating shareholders recovered over 80% of their losses.

*Privacy Class Actions:* We have litigated numerous class actions against Facebook, Sears, TD Ameritrade, and others involving the failure to protect customers' private information, some resulting from actual security breaches.

**Representative Settlements:**

- *In re Sony BMG CD Technologies*, No. 05-cv-0575 (S.D.N.Y.): Co-lead counsel in case that resulted in settlement correcting risk of harm to computer users caused by Digital Rights Management on music CD's. Settlement included replacement of all affected music CD's and an award of additional music CD's to class members.

- *Wormley v. GeoCities*, No. 196032 (Los Angeles Sup. Ct.): Class Counsel in consumer class action for privacy violations that is believed to be the first Internet privacy case to recover a benefit for impacted class members.

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 132 of 153

Case 2:08-cv-0113ᴖ-MJP    Document 35-2    Filed 03/ᴏ:...009    Page 12 of 18
Case 1:08-cv-22131-DLG    Document 56-3    Entered on FLSD Docket 02/13/2009    Page 12 of 18

*Mass/Class Tort Cases*:  Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cir. Ct. Cook County, IL):  Part of team representing a group of public housing residents bringing suit over contamination-related injuries.  Case settled on a mass basis for over $10,000,000.

- *Sturman v. Rush Presbyterian-St.Luke's Medical Center*, 2000 L 11069 (Cir. Ct. Cook County, IL):  Part of team of attorneys in suit against hospital and national association of blood banks alleging failure to warn of risks of hepatitis C infection as a result of past blood transfusions.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International.  Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States.  We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## CLASS ACTION DEFENSE PRACTICE GROUP

Our founding attorneys began their careers defending class actions at large national firms. We have successfully handled numerous class actions on behalf of banks, securities firms, and numerous retailers.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes. to litigation involving corporate takeovers.  We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars.  Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.  All of our attorneys have regularly practiced in state and federal trial and appellate courts.  The firm also has experience advising companies in international matters arbitrated before the ICC, including a multi-billion dollar action against Shell Oil.

## LEGAL CONSULTING

Legal consulting is an area of practice that sets KAMBEREDELSON apart from other law firms. The firm advises on governmental and consumer issues and has helped its clients formulate business strategies, revise contractual and advertising material, and implement consumer protection strategies more generally. Our clients range from small Internet start-ups, to brick and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**SCOTT A. KAMBER** is a founding member of KAMBEREDELSON. Mr. Kamber currently serves as lead or co-lead counsel in numerous major national class actions including *In re Pet Food*, *In re ATI Tech HDCP Litig.*, *Johnson v. Microsoft*, *In re Network Commerce Securities Litig.*, and *In re HP Power Plug and Graphic Card Litig.* Mr. Kamber has also served in leadership roles in private and class actions including suits on behalf of shareholders, consumers and private corporations in the United States and abroad, including: *In re Song BMG CD Technologies* (one of the largest computer virus cases ever resolved), *Wormley v. GeoCities* (consumer class action for privacy violations that is believed to be the first Internet privacy case to recover a benefit for impacted class members); *In re Starlink Growers* (represented sub-class of farmers who grew Starlink in a consolidated settlement of federal class action valued in excess of $100 million); *In re Loch Harris* (derivative action that successfully obtained dissolution of corporation and distribution of assets to shareholders); *In re Command Systems* (securities class action in which participating shareholders recovered over 80% of their losses); and *In re WebTV* (consumer class action for false advertising).

In addition to these commercial cases, Mr. Kamber has been involved in the efforts of African torture victims to bring their persecutors to justice under the Alien Tort Claims Act and has achieved significant decisions for his clients before the United States Court of Appeals for the Second Circuit and the Southern District of New York. One such result, *Cabiri v. Ghana*, 165 F.3d 193 (1999), is a leading Second Circuit case under the Foreign Sovereign Immunities Act.

Mr. Kamber graduated *cum laude* from University of California, Hastings College of the Law in 1991 where he was Order of the Coif, Articles Editor for Hastings Constitutional Law Quarterly and a member of the Moot Court Board. Mr. Kamber graduated with University and Departmental Honors from The Johns Hopkins University in 1986. Mr. Kamber has extensive courtroom experience and has tried over 15 cases to verdict. Prior to founding Kamber & Associates, LLC, Mr. Kamber represented both plaintiffs and defendants in a wide range of commercial litigation. Mr. Kamber is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Ninth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. In addition, Mr. Kamber is well versed in the procedures and practice of numerous arbitration forums, both domestic and international. Prior to practicing law, Mr. Kamber was a financial consultant.

**JAY EDELSON** is a founding member of KAMBEREDELSON. He has served as lead counsel in over 40 class actions, resulting in hundreds of millions of dollars in relief for his clients. His

class action cases have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous life insurance, health insurance, and other state statutes. In February of 2007, the Chicago Sun Times nicknamed Mr. Edelson the "Spam Slammer" after he secured the first settlement of a suit under the Telephone Consumer Protection Act for the alleged transmission of unsolicited text messages. Mr. Edelson has been involved in a number of high-profile "mass tort" class and mass actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

On the defense side, he has successfully represented numerous financial institutions and Internet marketing companies in class action defense, consumer protection issues, and general litigation. He regularly counsels companies on legal compliance issues.

Mr. Edelson is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting. He has also appeared on dozens of television and radio programs to discuss his cases. In April of 2007, Mr. Edelson provided testimony to the Subcommittee on Agriculture Appropriations, Senate Committee on Appropriations, U.S. Senate Hearing on "Pet Food Contamination" in connection with one of the class action cases he prosecuted. Mr. Edelson consults with the University of Chicago Medical Center and the Pritzker School of Medicine on Internet and legal ethics issues. He has taught classes on class action law at Northwestern Law School, John Marshall Law School, and DePaul Law School. Mr. Edelson is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a partner of KAMBEREDELSON. His practice concentrates, nearly exclusively, on consumer protection law and class actions. Mr. McGuire has taken leadership roles in many nationwide and multi-state class actions. His specific area of emphasis is on "new technology" class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile. Mr. McGuire has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Mr. McGuire graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association. Prior to working as a plaintiffs' attorney, Mr. McGuire spent several years counseling high-tech companies.

**MICHAEL MCMORROW** is a partner of KamberEdelson. His practice focuses on commercial litigation and class action law. Mr. McMorrow is an experienced trial and appellate litigator, and has been a member of the Trial Bar for the Northern District of Illinois since 2005. Mr. McMorrow has represented clients in court and at trial across a full spectrum of commercial litigation issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, healthcare and energy. Prior to joining the firm, Mr. McMorrow was Senior

Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mr. McMorrow graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the University of Illinois Law Review, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mr. McMorrow received his B.A. in Political Science from Yale University in 1994. Mr. McMorrow has been a member of the Chicago Bar Association Judicial Evaluation Committee since 2003, and his pro bono representations have included asylum applicants and prisoners' rights issues.

**STEVEN W. TEPPLER** is Senior Counsel to KAMBEREDELSON. Mr. Teppler concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Mr. Teppler has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Mr. Teppler's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer*, Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 Jurimetrics J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton: A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System*, e-filing Report, June 2005. Mr. Teppler is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Mr. Teppler graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., summa cum laude, from the City College of New York in 1977. Mr. Teppler is admitted to the bars of New York, the District of Columbia and Florida.

**DANA B. RUBIN** is an associate at KAMBEREDELSON focusing her practice on a wide range of class action issues. She graduated with honors from the University of Maryland, College Park in 1993. She received her J.D. in 1999 from Fordham University School of Law, where she was an Associate Editor on the Intellectual Property, Media & Entertainment Law Journal.

Prior to joining KAMBEREDELSON, Ms. Rubin played a role in numerous private and class actions on behalf of shareholders and consumers. Ms. Rubin has also represented both plaintiffs and defendants in employment litigation and civil rights matters. Ms. Rubin is admitted in the State Courts of New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the New York State Bar Association.

**STEVEN LEZELL** is an associate at KAMBEREDELSON. Mr. Lezell has litigated a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 136 of 153

Case 2:08-cv-0113ᴏ-MJP    Document 35-2    Filed 03/0-.2009    Page 16 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 16 of 18

briefs, prosecuted class actions and participated in multi-session mediations.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Mr. Lezell also served as a Notes and Comments Editor for *The Chicago-Kent Law Review* and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004. Mr. Lezell was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Lezell received his B.A. in political science, with Distinction, from the University of Michigan—Ann Arbor in 2002.

**RYAN D. ANDREWS** is an associate at KAMBEREDELSON. Prior to joining the firm, Mr. Andrews engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals. He has been appointed class counsel in multiple complex high-stakes class actions.

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif*. While in law school, Mr. Andrews was a Notes & Comments Editor for *The Chicago-Kent Law Review*, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Mr. Andrews graduated from the University of Michigan in 2002 earning his B.A., *with distinction*, in Political Science and Communications.

**RAFEY S. BALABANIAN** is an associate at KAMBEREDELSON. Prior to joining the firm, Mr. Balabanian was an associate attorney with a boutique Chicago law firm where he practiced commercial litigation. Mr. Balabanian has represented individual and corporate clients ranging from real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. Mr. Balabanian has first chaired both jury and bench trials, engaged in extensive motion practice, litigated class action matters and has acted as lead counsel in several mediations and arbitrations.

Mr. Balabanian received his J.D. from the DePaul University College of Law in 2005. While in law school, Mr. Balabanian received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Mr. Balabanian received his B.A. in history, *with distinction*, from the University of Colorado – Boulder in 2002.

**MICHAEL J. ASCHENBRENER** is an associate at KAMBEREDELSON. Prior to joining the firm, Mr. Aschenbrener was an associate for a large plaintiffs' consumer protection law firm where he prosecuted individual and class actions on behalf of consumers against mortgage companies and debt collectors. Mr. Aschenbrener successfully litigated multiple cases to judgment, securing redress for aggrieved consumers. Mr. Aschenbrener is also a former Assistant Attorney General for the State of Minnesota and a veteran of the telecommunications

and advertising industries.

Mr. Aschenbrener graduated from Chicago-Kent College of Law in 2007. During law school, he was an award-winning member of the Moot Court Honor Society, as well as Editor of the Seventh Circuit Review. He also published an article in a law journal and received a CALI Award for obtaining the highest grade in his Tax Procedure course.

Mr. Aschenbrener received his B.A. in Journalism from the University of Minnesota-Twin Cities in 2001.

**ETHAN PRESTON** is Of Counsel to KAMBEREDELSON. Mr. Preston focuses on consumer technology, and concentrates his practice in antitrust/competition issues and information security issues. Mr. Preston has taken substantial leadership roles in numerous class action lawsuits. Mr. Preston is admitted to practice before the Northern District of Illinois, the District of New Mexico, and Illinois state courts. (Mr. Preston is an inactive member of the New Mexico state bar.)

Mr. Preston has authored the following law review articles: *Cross-Border Collaboration by Class Counsel in the U.S. and Ontario,* 4 Canadian Class Action Rev. 164 (2007), *The Global Rise of a Duty to Disclose Information Security Breaches,* 22 J. Marshall J. Computer & Info. L. 457 (2004) (with Paul Turner), Computer Security Publications: *Information Economics, Shifting Liability and the First Amendment,* 24 Whittier L. Rev. 71 (2002) (with John Lofton), and The USA PATRIOT Act: *New Adventures in American Extraterritoriality,* 10 J. Fin. Crime 104 (2002). Mr. Preston has also lectured on copyright issues at the University of Illinois at Chicago, and on comparative law on attorneys' fees and costs for the Center for International Legal Studies.

Mr. Preston received his Bachelor of Arts degree with honors from the Plan II honors program at the University of Texas at Austin, and his J.D. with distinction from the Georgetown University Law Center in 2001.

**ALAN HIMELFARB** is Of Counsel to KAMBEREDELSON. Mr. Himmelfarb was admitted to the practice of law in California in July 1979. At that time, at the age of 23, he was the youngest member of the California Bar. Within five years, he became managing attorney of a law firm employing six attorneys and a support staff of ten. He specialized in complex litigation, contracts, high-technology, foreign licensing, and foreign technology transfers, and practiced before both state and federal courts. In 1988, he took a position overseas as a foreign legal consultant in Asia. In this capacity, he acted as chief negotiator for international sales/service/technical transfer agreements, mediated cross-cultural (Asian-Western) business and governmental interests, evaluated international business/marketing strategies for multinational corporations, drafted and negotiated a full range of international transactional agreements for Korean, European and American corporations and businessmen and marketed legal services to Korean domestic market and international community.

In 1992, Mr. Himmelfarb returned to Los Angeles in the capacity of a litigator, with an emphasis on plaintiffs' work against banks and other financial institutions. He has been engaged in class action litigation since 1994.

Case 2:09-cv-00393-MJP   Document 1-2   Filed 03/25/09   Page 138 of 153

Case 2:08-cv-0113ι.-MJP    Document 35-2    Filed 03/0-...ε009    Page 18 of 18
Case 1:08-cv-22131-DLG    Document 56-3    Entered on FLSD Docket 02/13/2009    Page 18 of 18

**DAVE STAMPLEY** is Of Counsel to KAMBEREDELSON, where his practice focuses on technology law, particularly the litigation of issues affecting the privacy and security of consumers' personal information. As an assistant attorney general for New York, Mr. Stampley led aggressive Internet Bureau enforcement actions recognized for producing meaningful privacy protections and corporate security standards. He handled New York and multistate cases involving DoubleClick, Ziff Davis Media, Eli Lilly (prozac.com), and AOL/Netscape (SmartDownload).

Prior to joining KAMBEREDELSON, Mr. Stampley was general counsel and compliance specialist at Neohapsis, a provider of information risk management, security consulting, and lab testing services. He previously served as director of privacy for Reynolds & Reynolds, a global Fortune 1000 technology solutions provider.

In addition to Mr. Stampley's technology law and corporate compliance expertise, he gained extensive trial experience as an assistant district attorney in the premier public prosecutor's office, the Manhattan D.A.'s office (New York County). His 30 trials included serving as co-counsel in the case against Edward Leary, the "Manhattan Subway Bomber."

Mr. Stampley is a Certified Information Privacy Professional and a faculty member of the Institute for Applied Network Security. He frequently speaks at conferences on security and privacy compliance issues and has been a guest lecturer at the New York University Stern School of Business and DePaul University's Graduate Information Technology Studies. He served as an invited expert on the Platform for Privacy Preferences (P3P) Vocabulary Working Group of the WorldWide Web Consortium (W3C). Mr. Stampley clerked for the Honorable Lenore L. Prather of the Supreme Court of Mississippi and is a former business applications programmer and systems analyst.

Mr. Stampley is a graduate of the University of Virginia School of Law, where he was a Dillard Fellow, and Mississippi State University.

**EXHIBIT D**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

DENEE VANDYKE, individually and on behalf )
of a class of similarly situated individuals,           )
                                                                        )
                        Plaintiff,                              )          No.          08 - 3 2 8 9 8 CA 02
                                                                        )
        v.                                                          )
                                                                        )
ALLTEL COMMUNICATIONS, LLC, a             )
Delaware Limited Liability Company,               )          CLASS REPRESENTATION
corporation, and MEDIA BREAKAWAY, LLC )
a Nevada Limited Liability Company,               )          ORIGINAL
                                                                        )          FILED
                        Defendants.                         )          JUN 19 2008
------------------------------------------------------------x
                                                                                  HARVEY RUVIN
                                                                                       CLERK

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Denee Vandyke brings this class action complaint pursuant to Florida Rule of

Civil Procedure 1.220 against Defendants Alltel Communications, LLC ("Alltel") and Defendant

Media Breakaway, LLC d/b/a Ringaza ("Ringaza") seeking to stop Defendants' unlawful

practice of charging cellular telephone customers for products and services the customers have

not authorized, a practice which has resulted in Defendants unlawfully collecting money from

consumers statewide, and to obtain redress for all persons injured by their conduct. Plaintiff, for

her class action complaint, alleges as follows upon personal knowledge as to herself and her own

acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by her attorneys.

1

### Parties

1.      Plaintiff Denee Vandyke is a Florida resident.

2.      Defendant Alltel is a leading provider of cellular telephone service in the United States. Alltel is a Delaware corporation with its principal offices in the State of Arkansas. Alltel does business throughout the State of Florida and this County.

3.      Defendant Media Breakaway, LLC d/b/a Ringaza ("Ringaza") is a "mobile content provider" that creates and distributes, among other things, music ringtones, wallpapers, games, graphics, horoscopes, data, news, and information transmitted or received via chat services (collectively, "content") to cell phone devices. Ringaza is a Nevada limited liability company with its headquarters and principal place of business in Colorado. It does business throughout the State of Florida and in this County.

### Jurisdiction and Venue

4.      The amount in controversy exceeds the sum of $15,000 exclusive of interest, costs and attorney's fees. This Court has jurisdiction over the subject matter.

5.      Venue is properly laid in Dade County pursuant to section 47.051, Florida Statutes (2007) because Defendants conduct their regular business affairs through one or more agents or other representatives located in Dade County, Florida.

### Conduct Complained Of

6.      This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services. These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather

2

alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

7.      The second underlying phenomenon of this case constitutes its very core. That is, just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers, such as Alltel. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies, such as m-Qube, known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount charged in each premium mobile content transaction.

8.      The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant defendants -- is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies including Defendants in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

9.      Defendants exploit this flaw by selling mobile content through the carriers' mobile commerce application installed on consumers' cellular telephones (commonly referred to

3

as "on-portal" or "on-deck" transactions), as well as through a variety of other mediums such as television, radio and non-mobile Internet websites (collectively known as "off-portal" or "off-deck" transactions).

10.    As Defendants also know, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed, Defendants have reaped and retained their respective shares of the improper collections.

11.    While the total sales in Florida of premium mobile content in 2008 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendants' practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

12.    Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

13.    Armed with only a cell phone number, the mobile content provider can simply provide that number, along with an amount to be charged, to a billing aggregator. The

4

aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

14.   Because the protections normally present in consumer transactions – such as signatures and private credit card numbers – are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

15.   While aggregators charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services offered by a content provider, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

16.   The carrier then bills and collects the charge from its current subscriber, retains a portion of the proceeds as its "revenue share" and then remits the balance to the aggregator who has direct access to its network, who retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider.

5

17.    Numerous transactions and significant amounts of dollars have been processed in Florida transactions over recent years and carrier partners, aggregator partners and content provider partners have profited greatly from their arrangements.

18.    Carriers such as Alltel routinely process charges for mobile content that have not been authorized by the charged party.

19.    Mobile content providers such as Defendant Ringaza have not only sanctioned this illegal billing, they have promoted it by facilitating partnerships between the carriers and the aggregators that contains few if any safeguards to prevent unauthorized charges.

20.    Indeed, if Defendants wanted to end this illegal billing, they could do so in an instant. All they would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and her/his authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

21.    But instead of implementing such a simple safeguard, Defendants have intentionally created and maintained a system that encourages fraud at every step.

**The Carrier's Role in the Scheme to Defraud**

22.    Alltel uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

23.    As described above, Alltel's services include providing access to and billing for various third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, mobile payment services and other forms of software provided by hundreds of third-party vendors.

6

24.   Alltel has contracted with third-party providers to bill and collect from Alltel's customers the services provided by such third-party content providers, the charges for which are included directly on a customer's monthly wireless bill.

25.   The duty of good faith and fair dealing, a part of every contract, requires that Alltel not bill any customer for any good or service not authorized by the customer.

26.   Upon execution of said Service Agreements and activation of cellular telephone accounts, Alltel provides its customers a ten-digit cellular telephone number.

27.   As explained above, unbeknownst to its customers, Alltel frequently charges consumers for services that were never authorized.

28.   As a result, Alltel has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers. Alltel and third-party service providers have, on information and belief, profited significantly through this practice.

29.   Alltel's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the mobile content provider's claim that such customer consented to be charged for their mobile content services. Alltel further knows that it cannot authenticate such customer's authority to be billed for mobile content charges. In light of its knowledge of these facts, Alltel's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

30.   Because the amount Alltel is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person – and because of Alltel's vast

7

resources and superior bargaining power, Defendants employ this scheme with the hope and expectation that its illegal conduct will go unpunished.

### Amount In Controversy

31.    Plaintiff makes no specific allegation that the amount in controversy (including requests for attorneys' fees, injunctive relief, etc.) exceeds any specific amount, let alone $5,000,000.

32.    Further, Plaintiff is not seeking a refund of all mobile content charges, but rather only those that were unauthorized.

### The Facts Relating to Named Plaintiff

33.    In or about 2007, Plaintiff purchased new cell phone service for her family's personal use from an authorized Alltel sales representative.

34.    On that same day, in exchange for an Alltel cell phone service plan, Plaintiff agreed to pay service fees to Defendant on a periodic basis.

35.    Upon activating her cellular telephone account, Alltel provided Plaintiff a cellular telephone number.

36.    Beginning in or about the latter half of 2007, Plaintiff's cell phone account was charged for multiple unwanted mobile content services by Defendants.

37.    At no time did Plaintiff authorize the purchase of these products and services offered by Defendant, and at no time did Plaintiff consent to text messages being sent to her cellular telephone.

38.    During the relevant time period, Defendant Alltel caused Plaintiff to be charged service fees in various amounts for mobile content provided by Defendant Ringaza.

8

39.     At no time did Plaintiff authorize Defendant or anyone else to bill her for these charges.

40.     Refusing to pay for such unauthorized charges, Defendant Alltel discontinued Plaintiff's cellular telephone service in or about April 2008.

41.     Defendant continues to attempt to collect from Plaintiff for such unauthorized charges.

42.     At no time did Defendant verify Plaintiff's purported authorization of these charges, and at no time did Defendant provide a complete refund consisting of the premium text message charges, ordinary text messages, data charges, back interest and/or termination fees. Nor did Alltel provide Plaintiff an assurance that such unauthorized charges would not appear in future billing periods or that it would discontinue its attempted collection of such funds.

### Class Representation Allegations

43.     Plaintiff brings this action on behalf of herself and two classes of similarly situated individuals. Those classes are defined as follows:

A.     The "Carrier Class": a class consisting of all Alltel wireless telephone subscribers in Florida who suffered losses or damages as a result of Alltel billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendants, and (ii) any employee of a defendant.

B.     The "Ringaza Class": all wireless telephone subscribers in the nation who suffered losses or damages as a result of Ringaza billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendants, and (ii) any employee of a defendant.

9

44. This action is suitable for class treatment pursuant to Florida Rule of Civil Procedure 1.220(b)(3). On information and belief, there are no less than 1,000 class members in each respective class.

45. The claims of Plaintiff are typical of the claims of all of the other members of the respective Classes.

46. Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Classes.

47. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

48. Defendants have acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

49. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the respective Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

10

50.    There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Carrier Class include but are not limited to the following:

    (a)    Whether Alltel's conduct described herein is in breach of contract.

51.    Common questions for the Ringaza Class include:

    (a)    Whether Ringaza has unjustly received money belonging to Plaintiff and the Ringaza Class and whether, under principles of equity and good conscience, Ringaza should not be permitted to retain it;

    (b)    Whether Ringaza tortiously interfered with contracts between Plaintiff and the Ringaza Class on the one hand, and their wireless carriers on the other hand, by causing them to be charged for products and services by their carrier that were unauthorized.

**COUNT I**
**(Breach of Contract on behalf of the Carrier Class)**

52.    Plaintiff incorporates by reference the foregoing allegations.

53.    Plaintiff and the Carrier Class entered into substantially identical agreements with Defendant Alltel whereby Plaintiff and Alltel agreed to pay a certain sum of money in exchange for Alltel's activation of Plaintiff's cellular telephone account and its promise to provide various communication and related services to Plaintiff and the Carrier Class.

54.    Defendant Alltel expressly and/or impliedly agreed to provide Plaintiff and the Carrier Class with a cellular telephone number free of unauthorized charges for third-party products and services.

11

55.   Defendant Alltel further expressly and/or impliedly agreed to bill Plaintiff and the Carrier Class only for products or services the purchase of which they had authorized.

56.   Defendant Alltel further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

57.   Defendant Alltel breached its contractual obligations by providing Plaintiff and the Carrier Class with cellular telephone accounts that included unauthorized charges for mobile content and discontinuing Plaintiff's cellular telephone service for refusing to pay for such unauthorized charges.

58.   Defendant Alltel further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by billing Plaintiff and the Carrier Class for products or services, the purchase of which they never authorized.

59.   The aforementioned breaches of contract have proximately caused the Plaintiff and the Carrier Class economic injury and other damages.

## COUNT II
### (Restitution/Unjust Enrichment on behalf of the Ringaza Class)

60.   Plaintiff incorporates by reference the foregoing allegations.

61.   A benefit has been conferred upon Ringaza by Plaintiff and the Ringaza Class. Ringaza has received and retains money belonging to Plaintiff and the Ringaza Class resulting from their billing and collecting significant amounts of money in unauthorized mobile content charges.

62.   Ringaza appreciates or has knowledge of said benefit.

12

63.     Under principles of equity and good conscience. Ringaza should not be permitted to retain the money belonging to Plaintiff and the Ringaza Class which Ringaza has unjustly received as a result of its actions.

**COUNT III**
**(Tortious Interference with a Contract on behalf of the Ringaza Class)**

64.     Plaintiff incorporates by reference the foregoing allegations.

65.     Plaintiff and the Ringaza Class had contractual relationships with their wireless carrier whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts, and their carrier's promise to provide various communication and related services to Plaintiff and the Ringaza Class, and to bill Plaintiff and the Ringaza Class only for products or services the purchase of which they had authorized.

66.     Ringaza knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

67.     Ringaza intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners across the state.

68.     Plaintiff and the Ringaza Class suffered loss as a direct result of the conduct of Ringaza.

**WHEREFORE,** Plaintiff Denee Vandyke, on behalf of herself and the Classes, prays for the following relief:

        a.     Certify this case as a class action on behalf of the Class as defined above and appoint Denee Vandyke Class Representative, and appoint David P. Healy as lead counsel:

13

b.      Declare that the actions of Alltel, as set out above, constitute a breach of contract;

c.      Enter judgment against Alltel for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct;

d.      Declare that the actions of Ringaza, as set out above, constitute unjust enrichment and tortious interference with a contract;

e.      Enter judgment against Ringaza for all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

f.      Award Plaintiff and the Class reasonable costs and attorneys' fees;

g.      Award Plaintiff and the Class pre- and post-judgment interest;

h.      Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

i.      Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

June 5, 2008

Denea Vandyke, individually and on behalf of a class of similarly situated individuals

David P. Healy (940410)
2846-B Remington Green Cir.
Tallahassee, FL 32308
(850) 222-5400
(850) 222-7339 (fax)
Counsel to Plaintiff

Of Counsel:

Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 West Jackson Boulevard, Suite 550
Chicago, Illinois 60604
Telephone: (312) 589-6370

14